## Case No. 14,534.

### UNITED STATES v. BARTON.

[Gilp. 439.] [1]

District Court, E. D. Pennsylvania. Nov. 29, 1833.

PERJURY—OATH TAKEN BY DEPUTY COLLECTOR—AUTHORITY TO TAKE.

1. Where an oath, required to be administered by a collector of the customs, is falsely taken before a legal deputy of the collector, acting under the provisions of, and in the cases required by the act of March 2, 1799 [1 Stat. 644], it may be sufficient ground for an indictment for perjury.

[Cited in Spring v. Russell, Case No. 13,261.]

2. Under the provisions of the act of March 3, 1817 [3 Stat. 396], the deputy collector is not a mere agent, but is a permanent officer of the customs, and may exercise and perform the functions, powers and duties of the collector.

[Cited in Schmaire v. Maxwell, Case No. 12,-460; Falleck v. Barney. Id. 4,625; Platt v. Beach, Id. 11,215; Fifty Thousand Cigars, Id. 4,782; Chadwick v. U. S., 3 Fed. 753; Frelinghuysen v. Baldwin, 12 Fed. 397.]

3. Where in acts subsequent to that of March 3, 1817, the collector of the customs may administer an oath or perform any other act, it was unnecessary to authorise the deputy collector, for that follows of course.

On the 13th November, 1833, a warrant was issued by Judge HOPKINSON for the arrest of Henry Barton, charged on oath with swearing falsely, in a case where an oath was required from him, as the consignee of certain goods, wares and merchandise imported into the port of Philadelphia from a foreign place. On the 29th November, the defendant was brought up for hearing, and the following facts were given in evidence. On the 9th July, 1832, the ship Arab, Capt. Ball, arrived at this port, having on board, among other things, two casks of hardware, consigned to the defendant. On the 18th August following, he entered these goods at the custom house, and at the time of entry produced an invoice of them, which was marked at the time by the appraisers, and identified on this hearing. Annexed to the entry was the following oath of the defendant, made pursuant to the provisions of the fourth section of the act of 1st March, 1823. "I, Henry Barton. do solemnly and truly swear, that the entry now delivered by me to the collector of Philadelphia, contains a just and true account of all the goods, wares and merchandise imported by or consigned to me, in the ship Arab, whereof Ball is master, from Liverpool; that the invoice which I now produce contains a just and faithful account of the actual cost of the said goods, wares and merchandise, of all charges thereon, including charges of purchasing, carriages, bleaching, drying, dressing, putting up, and no other discount, drawback or bounty but such as has been actually allowed on the same; and that I do not know nor believe in the existence of any invoice or bill of lading other than those now produced by me, and that they are in the state in which I actually received them. And I do further solemnly and truly swear, that I have not, in the said entry or invoice, concealed or suppressed any thing whereby the United States may be defrauded of any part of the duty lawfully due on the said goods, wares and merchandise; and that if, at any time hereafter, I discover any error in the said invoice, or in the account now produced of the said goods, wares and merchandise, or receive any other invoice of the same, I will immediately make the same known to the collector of this district. So help me God. (Signed) Henry Barton. Sworn this 18th August, 1832, before me, J. K., Dy. Collector." Mr. John Kern, the deputy collector of the port of Philadelphia, testified, that this oath was administered by him to the defendant at the custom house, at the time of entry, and marked by him with his initials at the same time. Evidence was then produced, on the part of the United States, to show that the invoice, exhibited by the defendant and left at the custom house, was not in fact the original invoice received with the goods, nor one containing a just and faithful account of their actual cost; that it was made up here, after the arrival of the goods, by a person in the employment, and with the knowledge of the defendant; and that although the list of the articles was copied from the original received from Liverpool, yet the prices annexed were considerably altered.

Mr. Meredith, for defendant.

Reserving for another stage of this case, all remarks on the sufficiency of the testimony and the truth of the allegations, there is yet a fatal objection to these proceedings against the defendant. On legal grounds, he cannot be held to bail to answer this charge, for no evidence has been given of an offence punishable by the statutes of the United States. It is unnecessary to say that Henry Barton cannot be prosecuted here for perjury at common law; an indictment against him can only be sustained, if he has violated the provisions of an act of congress. This, however, he has not done. The fourth section of the act of March 1, 1823 [3 Story's Laws, 1882; 3 Stat. 730], provides, "that in all cases where goods, wares or merchandise shall have been imported into the United States, and shall be entered by invoice, one of the following oaths, according to the nature of the case, shall be administered by the collector of the port, at the time of entry, to the owner, importer, consignee or agent, in lieu of the oath now prescribed by law in such case." The form of an oath, similar to that taken by the

[1] [Reported by Henry D. Gilpin, Esq.]

defendant, is then given. In this case the oath was administered by the deputy collector, an officer in whom no such power is any where vested. The power is limited expressly to the collector. The various laws referring to the appointment and duties of the deputy, never confer this upon him. The twenty-second section of the act of March 2, 1799 [1 Story's Laws, 592; 1 Stat. 644], authorises the collector to exercise the duties of his office by deputy "when sick or necessarily absent." If even this provision could extend to duties designated by future laws, yet here no such necessity or absence has been shown; on the contrary, it has been the usual practice for the deputy collector always to administer these oaths. The ninety-fifth section of the same law is only applicable to similar cases of necessity or absence. The seventh section of the act of March 3, 1817 [3 Story's Laws, 1650; 3 Stat. 397], which authorises the appointment of deputy collectors, gives them no authority to administer oaths, though it recognises them as officers of the customs. When the act of March 2, 1821 [3 Story's Laws, 1811; 3 Stat. 616], was passed, which does authorise deputy collectors to administer an oath verifying a manifest, it expressly confined the power to deputy collectors residing in districts adjacent to the boundary lines of the United States; it confers no such authority on deputies residing in sea-ports. Finally; when the act of March 1, 1823, is passed, although the deputy collector has become a legal and recognised officer of the customs, this important duty is intrusted to the collector alone. The courts cannot intrust it to any other officer than the law has seen fit to do. Of course, they cannot make an act criminal which was never contemplated, much less forbidden by any statute.

Mr. Gilpin, U. S. Dist. Atty.

The act of congress of March 1, 1823, requires every importer or consignee to enter his goods and to produce, at the time of entry, the original invoice received by him. The law evidently refers to and contemplates the exhibition of an invoice received from abroad with the goods. To verify it as such an instrument, it obliges the importer to swear, at the time, that it is the only invoice received by him, and that it contains a just and faithful account of the cost of his goods; to make this obligation more explicit, it sets forth in words the exact oath which is to be taken. The eighteenth section of the act of April 30, 1790 [1 Story's Laws, 87; 1 Stat. 116], declares that if any person shall wilfully and corruptly commit perjury, in any deposition taken pursuant to the laws of the United States, he shall, on conviction, be punished; and the thirteenth section of the act of March 3, 1825 [3 Story's Laws, 2002; 4 Stat. 118], which more particularly prescribes and defines offences against the United States, declares that if any person, in any case, matter, hearing or other proceeding, when an oath or affirmation shall be required to be taken or administered, under or by any law of the United States, shall, upon the taking of such oath or affirmation, knowingly and willingly swear or affirm falsely, he shall be deemed guilty of perjury, and on conviction be punished accordingly. In this case the facts have been established beyond contradiction. An entry was made at the custom house by the defendant; he produced at the time a certain invoice; he subscribed and swore to a declaration, in the very words required by the law, that the invoice in question was the original one received by him; and it has been proved that it was not that instrument, but one made for the occasion by a person in his employment and with his knowledge. To meet this state of the law and facts, one ground alone is taken on behalf of the defendant, which is, that he is not guilty of perjury, because the oath taken by him was not administered by the collector; and that a deputy collector has no authority to administer it. To this it is replied, in the first place that the facts proved are sufficient to hold the defendant to bail; and that the objection will come up properly on his indictment, not on his arrest. But in the next place, the offence, as proved, is clearly a case of perjury; it is a false oath knowingly taken in a matter arising under a law of the United States. By the ninety-fifth section of the act of March 2, 1799, it is expressly declared that "all matters directed to be done by the collector may be done by the person authorised to act in his stead." And by the seventh section of the act of March 3, 1817, which is made perpetual by the fourth section of the act of May 6, 1822 [3 Story's Laws, 1848; 3 Stat. 681], deputy collectors are expressly declared to be officers of the customs; not mere deputies, to act in cases of necessity or absence, but permanent officers, authorised at all times "to act in the stead of the collector," as they might occasionally and incidentally do, under the old law. Now the power to administer this oath is no more a power specially given to the collector than all his other powers; consequently it falls within the duty of his deputy, as much as they do. In exercising it he executes a legal authority, and the act becomes in all respects a matter arising under a law of the United States.

Mr. Scott, for defendant, in reply.

The United States are bound to establish that an oath was taken by the defendant; that it was false in fact; and that it was administered by a person who had a right to administer it. Every circumstance and fact necessary to give authority to such person, must be shown in this stage of the cause; otherwise there is not even a prima facie case against the defendant, or any just ground for holding him to bail. The oath that was administered, and which is exhibited in evidence, is wrong in point of form. It appears

on its face to be taken before the deputy collector, when that prescribed and set out in the act of congress, is to be taken before the collector himself. The governing law on the subject, is the original act of March 2, 1799, which, in its twenty-first section, points out with great precision the duties and powers of the collector, and in that which follows, those of his deputy in case of his absence or sickness. In the thirtieth and thirty-sixth sections it gives the forms of oaths to be taken in certain cases; it prescribes the collector as the officer by whom they are to be administered; and it designates him, or a judge of the United States, or a judge of some state court of record, as the person, before whom an importer is' to verify his entries. It is thus apparent that the law regarded this power as one of peculiar trust; not such as falls within the province of an ordinary deputy; not one belonging as a matter of course to every officer of the customs. In 1821, by the first section of the act of March 2d, a deputy collector is, for the first time, authorized to administer such an oath; but it is limited to the exigency of the case, it is confined to deputies along the Canada frontier, who must be numerous, and of necessity exercise this power to prevent extensive frauds. The express authority thus given in a particular case, is a proof that it was not considered as implied by or incidental to the office, as previously constituted. Thus, then, the law stood ·in 1823, when the oath alleged to be violated by the defendant was prescribed; at this time deputies were in existence; they were officers known to the law; a power of administering oaths had been conferred on them in a special case; yet in a law very elaborately drawn up it is not again extended to them; such an omission would restrain any general power if it had been given before; but when, as we have seen, it was not previously conferred, the present want of it is conclusive proof that there was no intention to authorize it by implication.

HOPKINSON, District Judge. By the twenty-second section of the act of March 2, 1799 (1 Story's Laws, 592 [1 Stat. 644]), the collector, in cases of occasional and necessary absence, or of sickness, and not otherwise, may exercise and perform his functions, powers and duties by deputy, duly constituted under his hand and seal; and he is to be answerable for the acts of this deputy. This deputy is not a permanent officer; his appointment is for the necessity or occasion which called for it, and terminates with it. He is the mere personal substitute of the collector; appointed by him, in the cases authorized by the law. The nature and manner of the appointment shows this: and it is made more manifest by what follows; that, in case of the disability or death of the collector, his duties and authorities shall devolve upon his deputy, "if any there be at the time;" which implies, that there was no such permanent office or officer as a deputy. Under this law, the question would arise, whether as there were cases and circumstances in which a deputy of the collector might perform his functions, including the administering of an oath, it would not be enough, on this hearing, to show that the person who administered the oath, was the deputy of the collector, and refer it to the evidence to be produced at the trial, whether the facts existed which gave him authority to do so.

This case, however, stands on other, perhaps on stronger ground. By the seventh section of the act of March 3, 1817 (3 Story's Laws, 1650 [3 Stat. 397]), every collector "shall have authority, with the approbation of the secretary of the treasury, to employ, within his district, such number of proper persons, as deputy collectors of the customs, as he shall judge necessary, who are hereby declared to be officers of the customs." The deputy, then, is no longer a mere agent or substitute of the collector, to be appointed from time to time, as the necessity may arise, from the absence, sickness or disability of the collector, but he is a constituted, a permanent officer of the customs, to be appointed with the approbation of the secretary of the treasury. What, then, are his powers? Generally speaking, a deputy, without any limitation of his authority, would have the authority of the principal. When the law creating the appointment and office has imposed no restrictions, we can put none: we must suppose that, as the permanent deputy is the substitute for the temporary officer authorised by the law of 1799, he must have the same powers and duties; that is, he may exercise and perform the functions, powers and duties of the collector.

The suggestion that authority to appoint deputies is given only to the collectors of districts adjoining the Canada frontier, has no support, either from the words of the law, its obvious policy, or the practice under it. The act declares that "every collector of the customs" shall have this authority; and every collector has used and exercised it from the passage of the law. When, in subsequent acts of congress, it is declared, that the collector may administer an oath, or perform any other act or duty, it was unnecessary to add, "or the deputy collector," for that followed of course, if the construction now given to the act of 1817, is correct. If, on the trial, it shall be thought advisable to give this question a more thorough examination, an opportunity will be afforded to do so.

Ordered, that the defendant, Henry Barton, enter into a recognizance, with sufficient sureties, in the sum of one thousand dollars, conditioned for his appearance at next April sessions of the circuit court of the United States.