## Case No. 11,215.

### PLATT v. BEACH.

[2 Ben. 303;[1] 1 Thomp. Nat. Bank Cas. 182.]

District Court, E. D. New York. March, 1868.

BANKING ACT — RECEIVER — UNITED STATES OFFICER—JURISDICTION.

1. A receiver of a national bank, appointed under the thirty-first section of the national banking act (13 Stat. 99), is an officer of the United States.

[Cited in Stanton v. Wilkeson. Case No. 13,299; Frelinghuysen v. Baldwin, 12 Fed. 397.]

[Cited in McCormick v. Thatcher, 8 Utah, 294, 30 Pac. 1093.]

2. This court, therefore, has jurisdiction of an action at common law, brought by such receiver (Act March 3, 1815, § 4 [3 Stat. 245]), to collect a claim which was due to the bank at the time of his appointment.

[Cited in Frelinghuysen v. Baldwin, 12 Fed. 397; Price v. Abbott, 17 Fed. 508; Stephens v. Bernays, 41 Fed. 402; Fisher v. Yoder, 53 Fed. 565.]

This was a suit brought by the plaintiff [Frederick A. Platt, receiver of the Farmers' and Citizens' National Bank] to recover a sum of money, alleged by the plaintiff to have been due from the defendant [Oren M. Beach] to the bank, of which the plaintiff was appointed receiver by the comptroller of the treasury, with the concurrence of the secretary of the treasury, under the provisions of the thirty-first section of the national banking act (13 Stat. p. 99, § 31). The defendant demurred to the complaint, assigning as the grounds of his demurrer: First. That this court had no jurisdiction of the subject of the action. Second. That the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

plaintiff had not the legal capacity to sue. Third. That the complaint did not state facts sufficient to constitute a cause of action.

R. H. Huntley, in support of the demurrer, argued as follows:

The first section of the national banking act establishes a separate bureau in the treasury department, which bureau is "charged with the execution of this and all other laws that may be passed by congress, respecting the issue and regulation of a national currency secured by United States bonds." The chief officer of this bureau is the comptroller of the currency, and he is under the general direction of the secretary of the treasury. He shall be appointed by the president, and shall have a competent deputy appointed by the secretary. He shall, from time to time, employ the necessary clerks to discharge such duties as he shall direct, which clerks shall be appointed by the president, and shall have a competent deputy appointed by the secretary. He shall, from time to time, employ the necessary clerks to discharge such duties as he shall direct, which clerks shall be appointed and classified by the secretary of the treasury, in the manner now provided by law. Section 31 provides that, in a certain case, "the comptroller may, with the concurrence of the secretary of the treasury, appoint a receiver to wind up the business of such association, as provided in this act." Section 50 provides that, in certain other contingencies, the comptroller may appoint a receiver, whose duties are clearly defined, and, among them, are these: "He shall collect all debts, dues, and claims belonging to such association, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts," &c. Section 56 provides that "all suits and proceedings arising out of the provisions of this act, in which the United States, or its officers or agents, shall be parties, shall be conducted by the district attorneys of the several districts under the direction and supervision of the solicitor of the treasury." It will readily be seen that none of these provisions authorize the plaintiff to bring this action, or this court to entertain it. The inferior courts of the United States (circuit and district courts) have no jurisdiction, except such as congress, by constitutional laws, has conferred upon them. Hubbard v. Northern R. Co. [Case No. 6,818]; Ex parte Cabrera [Id. 2,278]; Shute v. Davis [Id. 12,828]; Livingston v. Jefferson [Id. 8,411]; Turner v. Bank of North America, 4 Dall. [4 U. S.] 8. But it is claimed that Act March 3, 1815, § 4 (3 Stat. 245), confers this jurisdiction. That section is as follows: "The district court of the United States shall have cognizance, concurrent with the courts and magistrates of the several states and the circuit courts of the United States, of all suits at common law, when the United States, or

any officer thereof, under the authority of any act of congress, shall sue, although the debt, claim, or other matter in dispute, shall not amount to one hundred dollars."

Therefore, the defendant's counsel submits these two propositions: First. The receiver is not an officer of the United States; and, Second. Even if he were such officer, no act of congress has authorized him to sue.

First.—This receiver is not an officer of the United States. 1. He fills no office. That is not an office which is not established by law or usage, but which is occasional or transitory, depending upon fluctuations and exigencies. An office must be fixed and established. The duties exercised by the incumbent may be occasional and transitory, but the office must be one always open, and ready for performance when such occasions arise—the incumbent may die or be removed, but the office remains, while, if the office is abolished, the officer ceases to exist. A servant or agent may be appointed to do a particular thing, or perform a specific duty, and, as soon as the thing is done or the duty performed, his agency or service ceases. But he is no officer, and fills no office. "An office is a public charge or employment, and the term seems to comprehend every charge or employment in which the public are interested." Wood's Case, Hopk. Ch. 7, 2 Cow. 30, note. Thus a village tax collector is a public officer. People v. Bedell, 2 Hill (N. Y.) 196. "Lexicographers generally define office to mean public employment; and I apprehend its legal meaning to be an employment on behalf of the government in any station or public trust, not merely transient, occasional, or accidental." In re Oaths to be Taken by Attorneys and Counsellors, 20 Johns. 493, per Platt, J. "The phrase, 'civil officers,' in a constitutional provision prescribing the power of appointment of civil officers,—held, to embrace those officers only, in whom part of the sovereignty, or municipal regulations, or general interests of society are vested, and not to include such functionaries as canal commissioners." U. S. v. Hatch, Burn. 22; cited in 2 Abb. Nat. Dig. 120, p. 48. 2. The position occupied by this receiver is simply that of trustee, not an office in which the public, as the public, are interested, but in which only particular individuals have any legal interest, viz: the stockholders and depositors of the bank. These are not the public. "Trustees are private or public. The former hold property for the benefit of an individual, or more than one, but who are distinctly pointed out, personally, or by other sufficient description. Public trustees are those who hold for the benefit of the whole public, or for a certain large part of the public, as a town or a parish, and they are usually treated as official persons, with official rights and responsibilities." 1 Pars. Cont. (2d Ed.) 101, 102, 104. This receiver is trustee for the depositors and stockholders, but not for the bill holders.

Section 47 of the act; also sections 48, 49. But neither the stockholders nor depositors, nor yet the bill holders, of a bank, are the public in a legal sense. They are persons who are distinctly pointed out personally, or by other sufficient description. Pars. Cont., supra. 3. The same law that authorizes the appointment of this receiver, authorizes the election of a president of a bank, and all its other officers (section 8), but it cannot be pretended that the president of a national bank is a United States officer. Christman v. Floyd, 9 Wend. 342; New York & H. R. Co. v. Mayor, etc., of New York, 1 Hilt. 584, where it is held that the metropolitan police commissioners are not state officers; and see Id. 569, O'Conor, arguendo. 4. The constitution of the United States (article 1, § 9, par. 7) provides that "no person holding any office of profit or trust under the United States, shall, without the consent of the congress, accept of any present, emolument, office, or title of any kind whatever, from any king, prince, or foreign state." Under this clause it has been held that a marshal of the United States cannot, at the same time, hold the office of commercial agent of France. 6 Op. Attys. Gen. 409. But can it be claimed that this receiver is under such interdiction? Again, article 2, § 1, provides that no person holding an office of trust or profit under the United States, shall be appointed an elector. Cannot this receiver be an elector? Again, article 2, § 2, par. 2, provides that the president "shall nominate, and by and with the consent of the senate, shall appoint ambassadors," &c., * * * "and other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law." The effect of this and the other clauses in the constitution, on the subject of appointment to office, is to declare that all officers under the federal government, except in cases where the constitution itself may otherwise provide, shall be established by law. U. S. v. Maurice [Case No. 15,747]. But there is no office of receiver of national banks established by law. Again, article 2, § 2, par. 2, provides, "but the congress may, by law, vest the appointment of such inferior officers as they think proper, in the president alone, in the courts of law, or in the heads of departments." But this receiver was appointed by the comptroller of the currency, who is not the head of a department, but the "chief officer of a bureau." Bank Act, § 1. The comptroller has no authority of appointment, even as to his own clerks. They are to be appointed and classified by the secretary of the treasury, in the manner now provided by law. Id. § 1. 5. By act of congress of June 11, 1864 (13 Stat. 123), it is enacted, "that no member of the senate," &c., * * * "nor shall any head of a department, head of a bureau, clerk, or any other officer of the government, receive or agree to receive, any compensation whatsoever, directly or indi-

rectly, for any services rendered, or to be rendered, after the passage of this act, to any person, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter or thing in which the United States is a party, or directly or indirectly interested, before any department, court-martial, bureau, officer, or any civil, military or naval commission whatever." Now, can it for a moment be pretended that this receiver is such an officer as is here named or referred to; or that he cannot appear against the United States in any matter involved in the section quoted? This language cannot apply to him by any construction. Yet, if he is an officer of the government, he is an officer of the United States, and, as such officer, he is under this interdiction. Wise v. Withers, 3 Cranch [7 U. S.] 336. In this case, Marshall, C. J., says: "A distinction has been attempted between an officer of the United States and an officer of the government of the United States, confining the latter more especially to those officers who are considered as belonging to the high departments; but in-this distinction there does not appear to the court to be a solid difference. They are terms which may be used indifferently to express the same idea." Again. no officer of the government of the United States shall receive money for aiding to procure a contract of the government (2 Brightly, Dig. p. 105; Act July 16, 1862, § 1), nor act as a claim agent (1 Brightly, Dig. 132, § 3). Does this language include this receiver? Again, different classes of officers are spoken of in the various statutes and acts of congress, as "officers in a court of the United States" (1 Brightly, Dig. p. 213, §§ 63–65); "an officer of the customs" (Id. p. 214, § 66). Persons employed by the collector of customs are "declared to be officers of the customs." Id. p. 322, § 19. Custom house employees are called clerks. Id. p. 323, § 24. Inspectors of customs, weighers, and gaugers are not officers. Id. p. 319, § 3. The legislature makes a distinction between an officer and one discharging an official function under a department of the government, and also between an officer and "a person holding a place of trust or profit." Act Feb. 26, 1853, § 6 (10 Stat. 171). The attention of the court is particularly called to this entire section. Again, Act Sept. 30. 1850, § 1 (9 Stat. 452), declares that in no case shall one individual be paid the salaries of two different offices on account of having performed the duties thereof at the same time. If, being the receiver of one bank constitutes the plaintiff an officer, then. if he is the receiver of another bank at the same time, he will be filling two offices at once, but one of which he can be paid for. Is this either the letter or the spirit of the act authorizing his appointment? The act of congress of April 27, 1816 (3 Stat. 343), enacts that once in two years a register,

containing correct lists of all the officers and agents, civil, military, and naval in the service of the United States, made up to the last day of September of each year in which a new congress is to assemble, shall be compiled and printed under the direction of the department of state. What secretary of state would think of including this receiver in such a list? 6. If this receiver is an officer of the United States, he cannot hold an office under the government of some of the separate states, even though he resided in them. He cannot in Kentucky. Rodman v. Harcourt, 4 B. Mon. 224; Id. 499. 7. This receiver does not represent the government. He only represents the creditors and stockholders of the bank. Gillet v. Moody, 3 N. Y. 488. He can no more be a United States officer than an assignee in bankruptcy under the bankrupt act can. 8. There is nothing in the nature of the institutions organized under the currency act, conferring jurisdiction on this court in this case. District courts had no jurisdiction of actions by the United States Bank. Bank of U. S. v. Martin, 5 Pet. [30 U. S.] 479; Bank of U. S. v. Deveaux, 5 Cranch [9 U. S.] 61. 9. The district court had jurisdiction of an action brought by the assignee of a bankrupt under the bankrupt act of 1841 [5 Stat. 440], only because the sixth section of that act especially conferred the jurisdiction. Kelly v. Smith [Case No. 7,675]. District courts have such authority and jurisdiction as is conferred on them expressly by statute, and no other; and it was, therefore, held that a district judge could not remove an assignee in bankruptcy, or compel him to account. Lucas v. Morris [Id. 8,587]. 10. The judiciary act of Sept. 24, 1789 (1 Stat. 78), contains this provision: "Nor shall any district or circuit court have cognizance of any suit to recover the contents of any promissory note or other chose in action, in favor of an assignee, unless a suit might have been prosecuted in such court to recover such contents if no assignment had been made, except in cases of foreign bills of exchange." Under this act, it has been held that the general assignee of the effects of an insolvent cannot sue in the federal courts, if his assignor could not have sued in these courts. Seré v. Pitat, 6 Cranch [10 U. S.] 332. The receiver is in no better condition to sue than the bank would have been. Hyde v. Lynde, 4 Comst. [4 N. Y.] 392. Clearly, then, he cannot bring this action. Speaking of jurisdiction of courts in certain cases, Chief Justice Marshall says: "The act of 1815 contains a clause which does, we think, confer jurisdiction. It cannot be doubted that this clause vests jurisdiction expressly in the district courts, in all suits at common law, where any officer of the United States sues under authority of any act of congress. The postmaster general is an officer of the United States who sues under the authority of the act of 1810, which makes it his duty to sue for debts and balances due to the office

he superintends, and obliges him to sue in his own name." Postmaster General v. Early, 12 Wheat. [25 U. S.] 146. But where is there any act which makes it the duty of this receiver to sue in his own name; and, if such authority be shown or implied, where is jurisdiction of this action expressly conferred on this court? "A receiver can only sue in the circuit court in case the corporation which he represents could have done so." Bradford v. Jenks [Case No. 1,769].

Second.—But even if it be conceded that this receiver is a United States officer, no statute has given him authority to sue in this court. 1. The act of 1815 authorizes such officer to sue only where he is authorized by some act of congress. As such officer could not be in the contemplation of the legislature until the passage of the national currency act, that act must be looked to for his authority, and no other, unless it be subsequently enacted. Such authority must be express, and cannot be implied. It does not grow out of the fact that he has the common law powers of a receiver. Such powers enable him to go into a common law court, but not elsewhere. This principle is recognized in the act itself. Section 50 provides that, upon the order of a court of record of competent jurisdiction, he may sell or compound all bad or doubtful debts. This clearly refers to a court already having jurisdiction, and confers no new jurisdiction. 2. This whole question is very simple. A receiver who, by the terms of the act (section 50), is styled an agent, sues in a court which cannot entertain the action unless such receiver is an officer of the United States. That he is not such an officer has been clearly shown. It is for the plaintiff to discover, in the act authorizing his appointment, authority for him to sue here—such authority cannot be shown either expressly, or by implication.

B. F. Tracy, U. S. Dist. Atty., and R. D. Benedict, for plaintiff, argued as follows:

The question raised by the demurrer, is whether the plaintiff is an "officer of the United States?" If he is, this court has jurisdiction under the act of March 3, 1815 (1 Brightly, Dig. p. 231, § 13). First. Is plaintiff an officer? A receiver is always an officer. Edw. Rec. p. 3, and cases cited; Bouv. Law Dict. word "Receiver"; Parker v. Browning, 8 Paige, 388; Booth v. Clark, 17 How. [58 U. S.] 331. What is he, if he is not an officer? Second. Who have been held to be officers? 1. Inspectors of customs. U. S. v. Barton [Case No. 14,534]; U. S. v. Morse [Id. 15,820]. 2. Special deputy collectors under the act of March 2, 1799 (1 Stat. 644). Merriam v. Clinch [Case No. 9,460]. 3. Bonded warehouse keepers under the internal revenue act. U. S. v. Stern [Id. 16,389]. These keepers are appointed for every warehouse. Act 1866, § 40. 4. Inspectors of distilleries are officers. Id. §§ 29, 31. 5. A sailmaker in the Washington navy yard. Sanford v. Boyd [Case No. 12,311]. 6. A clerk in one of the departments appointed by the comptroller. Ex parte Smith [Id. 12,967]. Third. Why is he not an officer? Chief Justice Marshall (U. S. v. Maurice [Id. 15,747]) says: "An office is defined to be a public charge or employment, and he who performs the duties of the office is an officer. If employed on the part of the United States, he is an officer of the United States. Although an office is employment, it does not follow that every employment is an office. A man may be employed under a contract, express or implied, to do an act or perform a service, without becoming an officer. But if a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters upon the duty appertaining to his station, without any contract defining them, if those duties continue, though the person be changed, it seems very difficult to distinguish such a charge or employment from an office, or the person who performs those duties from an officer." This receiver comes within every word of this definition. His duties continue. They are defined by statute, and not by contract. He is appointed by government to perform them, and they would continue though the person of the receiver should be changed. Fourth. If he is an officer, he is an officer of the United States. Wise v. Withers, 3 Cranch [7 U. S.] 331. Fifth. If the defendant criticises the mode of appointment, which he has no right to say any thing about, the appointment by a collector or a surveyor, with the approval of the head of a department, has been held to be an appointment by the head of a department. U. S. v. Sears [Case No. 16,247]; U. S. v. Bachelder [Id. 14,490]; Ex parte Smith [supra]. The appointment of the plaintiff, by the comptroller, "with the concurrence of the secretary of the treasury," is exactly analogous. Sixth. There are so many officers appointed in that way, that no court could, for a moment, think of holding that such a mode of appointment was unconstitutional.

Mr. Huntley, in reply, said:

It is usual in speaking of an office without an incumbent, to say, the office is vacant, or, there is a vacancy in the office, implying that the station or franchise exists independently of any incumbent: and such is not only the common language or speech of men, but it is also the language of the courts, as in Philips v. Bury, 2 Term R. 351, where the court say, "Suspension does not create a vacancy in an office; it is only an impediment to the officer enjoying any benefit from it." Also as in Johnston v. Wilson, 2 N. H. 202, where the court say, "An office, when once filled, cannot be considered vacant till the term of service expire, or till the death, removal, or resignation of the person appointed." And again, as in Wilcox v. Smith, 5 Wend. 231,

where the court say, "To constitute an officer de facto, a mere claim to be a public officer, and exercising the duties of the office, are not sufficient; there must be some color of right to the office, or such acquiescence of the public as will authorize the presumption of at least a colorable appointment or election." In Plymouth v. Painter, 17 Conn. 585, the court say, "An officer de facto is one who exercises the duties of an office under color of right, by virtue of an appointment or election to that office; being distinguished on the one hand from a mere usurper of an office, and on the other from an officer de jure." In the case of Conner v. City of New York, 2 Sandf. 355, Sandford, J., at page 368, says, "An office is a right to exercise a public or private employment, and to take the fees and emoluments thereunto belonging. 2 Bl. Comm. 36. And a public officer is every one who is appointed to discharge a public duty, and receives a compensation for the same. Per Best, C. J., in Henly v. Mayor, etc., of Lyme, 5 Bing. 91." * * * "Public offices, in theory at least, are held and exercised for the benefit of the community," and at page 369, the same judge says, "Where an office is created by statute, it is wholly within the control of the legislature. The term, the mode of appointment, and the compensation may be altered at pleasure, and the latter may be even taken away, without abolishing the office." At page 375, the same judge says, "In our opinion, a public officer is an agent, elected or appointed to perform certain political duties in the administration of the government." "An 'office' which legislators are forbidden to create and then enjoy, is any continuing charge, or employment, or duty, defined by rules prescribed by law, and not by contract." Shelby v. Alcorn, 36 Miss. 273. The fact that the receiver was appointed by the comptroller of the currency, with the concurrence of the secretary of the treasury, does not strengthen the complaint, or change the plaintiff's condition. 1. The act (section 50) confers the power of appointment on the comptroller of the currency, and not on the secretary of the treasury, and his concurrence or approbation is neither required nor directed. 2. If this were not so, the concurrence of the secretary is not an appointment by him. The first of these propositions has been passed upon by the courts, holding that an appointment by the head of a department, in a case where the constitution does not provide, must be authorized by law. In the case of U. S. v. Maurice [supra], the court holds, that appointments to office can be made by the heads of departments of the United States government, in those cases only in which congress has authorized it by law; and therefore, the appointment of an agent of fortifications by the secretary of war, there being no act of congress conferring that power upon that officer, is irregular. [See Case No. 11,211.]

BENEDICT, District Judge. This is an action at common law, brought by a receiver of a national bank. A demurrer has been interposed to the complaint, for the purpose of raising the question of the right of the plaintiff to maintain such an action in a court of the United States. The claim to this right, on the part of the plaintiff, is based solely upon the fourth section of the act of March 3, 1815, it being conceded that there is no provision in the act creating the national banks, which expressly gives to the national courts jurisdiction of such an action. The provision in the act of 1815 relied on, confers upon the district and circuit courts of the United States, jurisdiction of "all suits at common law where the United States or any officer thereof, under the authority of any act of congress, shall sue;" and the question is, whether a receiver of a national bank appointed by the comptroller of the currency, with the concurrence of the secretary of the treasury, in accordance with the provision in section thirty-one of the act of June 3, 1864 (volume 13, c. 10), which provides for the creation and winding up of the national banks, is an officer of the United States within the meaning of the fourth section of the act of 1815 above referred to? As to the construction of this latter act, it can hardly be doubted, I apprehend, that it includes all persons holding office under any act of congress, whose appointment is required, by law, to be made in the mode prescribed by the constitution for the appointment of officers of the United States. The provision of the constitution (article 2. § 2, subd. 2) is this:

"The president shall nominate, and by and with the advice and consent of the senate, shall appoint ambassadors, other public ministers and consuls, judges of the supreme court, and all other officers of the United States whose appointments are not herein otherwise provided for, and which shall be established by law. But the congress may, by law, vest the appointment of such inferior officers as they think proper in the president alone, in the courts of law, or in the heads of departments."

If, then, this receiver, who is appointed under an act of congress to perform certain official duties by virtue of the act, is by law required to be appointed by the president, a court of law, or a head of a department, he must be deemed to have the right, under the act of 1815, to resort to this court to bring such actions as he may be required to bring in the discharge of the duties imposed upon him by law. The mode of his appointment is prescribed in the same provision which provides for the appointment of such a receiver, as follows: "The comptroller of the currency, may, with the concurrence of the secretary of the treasury, appoint a receiver to wind up the business of such association, as provided by the act." Section 13; 13 Stat. 709. An appointment so made is equivalent in law to an appointment by the secre-

tary of the treasury, who is the head of a department. This same question has arisen in regard to inspectors of the customs who are appointed under the act of March 2, 1799, which provides that the collector "shall, with the approbation of the principal officer of the treasury department, employ proper persons as weighers, gaugers, measurers and inspectors." Under this act it was long ago decided that inspectors of the customs were, in law, officers appointed by the head of the treasury department. U. S. v. Barton [Case No. 14,534]; U. S. v. Morse [Id. 15,820]; Sanford v. Boyd [Id. 12,311]; Ex parte Smith [Id. 12,967]. The words of the banking act are certainly as strong as those used in the act of 1799, and must be held to have the like effect. It follows, then, that the plaintiff is an officer of the United States as defined by the constitution, and accordingly within the meaning of the act of March 3, 1815. The nature of the duties imposed upon a receiver of a national bank also leads to the same conclusion. These duties are not defined by any contract, but by law and rule prescribed by the government. They are similar to those appertaining to an ordinary receiver appointed by a court. But such receivers have always been considered to be officers (Bouv. Law Dict., word "receiver"; Edw. Rec., p. 3), and they are officers of the court which appoints them. The plaintiff, then, is an officer, and as it is not seen how he can be considered to be an officer of any court, he must be an officer of the government which appoints him, into whose treasury he is required to pay all moneys he shall collect, by whose district attorney he is required by law to be represented in court, and under the direction and supervision of whose solicitor of the treasury all his suits and proceedings are to be conducted. Section 50. The judgment must accordingly be in favor of the plaintiff upon the demurrer, with leave to the defendant to answer on payment of costs.