# Assignment of Certain Functions Related to Military Appointments

Section 531(a)(1) of title 10 does not affirmatively prohibit delegation to the Secretary of Defense of the President's appointment authority.

The Appointments Clause of the Constitution does not prohibit Congress from allowing the President to choose between making such an appointment himself and delegating it to the Secretary of Defense.

So long as each nomination is submitted to the Secretary of Defense for approval (whether individually or in groups) and each appointment is made in the name of the Secretary of Defense (whether the document evidencing the appointment be signed by the Secretary or an authorized subordinate officer), the Constitution would permit much of the legwork of the appointment process to be delegated to a subordinate officer below the Secretary of Defense.

July 28, 2005

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF MANAGEMENT AND BUDGET

This memorandum records advice that this Office recently provided in response to three questions that you posed concerning a proposed executive order to delegate to the Secretary of Defense the President's power to make certain military appointments under 10 U.S.C. § 531(a)(1) (Supp. IV 2005). *See* Exec. Order No. 13384, 70 Fed. Reg. 43,379 (July 27, 2005). Section 531(a)(1) provides that "[o]riginal appointments in the grades of second lieutenant, first lieutenant, and captain in the Regular Army, Regular Air Force, and Regular Marine Corps and in the grades of ensign, lieutenant (junior grade), and lieutenant in the Regular Navy shall be made *by the President alone*." *Id.* (emphasis added). Section 301 of title 3, in turn, authorizes the President "to designate and empower the head of any department or agency in the executive branch, or any official thereof who is required to be appointed by and with the advice and consent of the Senate, to perform without approval, ratification, or other action by the President . . . any function which is vested in the President by law." Section 301 applies only if the law establishing the function "does not affirmatively prohibit delegation." 3 U.S.C. § 302 (2000).

*First*, you have asked whether 10 U.S.C. § 531(a)(1) affirmatively prohibits delegation of the President's appointment authority. In our view, section 531(a)(1) does not affirmatively prohibit delegation. While section 531(a)(1) authorizes appointments "by the President alone," the word "alone" in section 531 is most naturally read to mean "without the need for Senate consent." Subsection (a)(1) uses "alone" to distinguish subsection (a)(2), which provides that certain appointments "shall be made by the President, by and with the advice and consent of the Senate." The same usage is reflected in the Appointments Clause of the Constitution, which requires the President to make appointments "by and with the advice

and consent of the Senate," while permitting Congress to vest the appointment of inferior officers "in the President alone." There, too, the word "alone" means "without Senate consent," and Congress presumably incorporated that meaning in section 531. *Compare* 5 U.S.C. § 3345(a)(2) & (3) (2000) ("the President (*and only the President*) may direct" certain persons "to perform the functions and duties of the vacant office") (emphasis added).

This conclusion also comports with the meaning of the word "alone" in analogous statutes. For example, 10 U.S.C. § 12203(a) vests in the "President alone" the authority to make appointments of reserve officers in commissioned grades of lieutenant colonel and commander or below. Until title 10 was recodified in 1956, this law provided that "the President shall make all" such appointments. The word "alone" was added in the recodification, which was intended merely "to restate, without substantive change" the existing laws. Pub. L. No. 84-1028, 70A Stat. 1, 25, 640 (1956). The notes of revision indicate that the word "alone" was inserted as a clarification. And the Court of Claims concluded that "the word 'alone' was inserted in that section to make it clear that the President no longer needed Senate 'advice and consent' for appointments below general officer rank." *Jamerson v. United States*, 401 F.2d 808, 810 (1968).

In 1957, this Office offered the same interpretation of various statutes vesting in the "President alone" the authority to make temporary military promotions below flag grade. *See* Opinion for the President, from the Attorney General (May 31, 1957). The services' practice at that time was for the Secretaries of the Army, Navy, and Air Force to make these promotions. We determined that "this is a delegable function" under 3 U.S.C. § 301, and that "[n]one of the [pertinent] statutes affirmatively prohibits delegation." *Id.* at 4. "In view of the universal acceptance of this rule and the long standing practice in the several Services" and "in the absence of any expression of Presidential intent to the contrary," we concluded that "the present practice of the Service Secretaries of conferring promotions without prior reference to the President . . . is valid as a matter of law." *Id.* at 6–7. This view also accorded with the Office's more general statements about the ability of the President to delegate, at least to the head of a department, the power to appoint inferior officers. *See* Memorandum, *Re: Delegation of Presidential Functions* at 31 (Sept. 1, 1955); Memorandum for the Attorney General, *Re: The Power of the President to Delegate Certain Functions* at 110 (n.d. ca. 1955).

Longstanding Executive Branch practice also compels this conclusion. On several occasions over the last half century, the President has invoked section 301 or its predecessor to delegate to the head of a department appointment authority vested by statute in the President, whether that authority was vested in the "President alone," *see* Exec. Order No. 10637, §§ 1(s), 2(d), 20 Fed. Reg. 7,205 (Sept. 19, 1955) (certain military appointments); Exec. Order No. 11023, § 1(b)–(d), (h)–(j), 27 Fed. Reg. 5,133 (May 29, 1962) (certain appointments of commis-

sioned officers in the NOAA); Exec. Order No. 12396, §§ 1(c), (d), 2(a)(2), 47 Fed. Reg. 55,897 (Dec. 9, 1982) (certain military promotions); Exec. Order No. 13358, §§ 1(b), 2(b), 69 Fed. Reg. 58,797 (Sept. 28, 2004) (certain military reserve appointments), or simply in the "President," *see* Exec. Order No. 10250, § 1(a), (g), 16 Fed. Reg. 5,385 (June 5, 1951) (appointment of certain inferior officers in the Interior Department); Exec. Order No. 11140, § 1(a), (d), 29 Fed. Reg. 1,637 (Jan. 30, 1964) (certain commissioned officers of the Public Health Service). These orders not only reflect the Executive Branch's presumed view of the legality of these delegations, they also establish a practice of which Congress has been aware and in which Congress can be said to have acquiesced. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 702 (1979).

*Second*, you have asked whether the Constitution permits Congress to allow this practice. In particular, you have asked whether the Appointments Clause of the Constitution prohibits Congress from allowing the President to choose between making an appointment himself and delegating it to the head of a department. We believe that the Appointments Clause permits Congress to do so.

This conclusion follows first from the text of the Appointments Clause—in particular, its so-called Excepting Clause, which provides that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. The Clause plainly gives Congress some discretion to allocate the appointment power. Nothing in the text precludes Congress from vesting the power by law in the President while permitting him to delegate it to the head of a department subject to his supervision.

Nor is this conclusion inconsistent with the history of the Excepting Clause. The Appointments Clause as a whole reflects a compromise that was intended to foster a sense of responsibility, ensure accountability, curb any natural inclinations towards favoritism, and prevent logrolling and factions. *See generally The Federalist* Nos. 66, 76, and 77 (Alexander Hamilton) (Jacob E. Cooke ed., 1961). While the Excepting Clause received little attention at the Convention, it likely was intended to operate consistent with these values. Thus, it bears significance that a statute giving the President the option of making an appointment himself or instead delegating that authority to the head of a department would not diminish these values—at least no more so than a statute vesting appointment authority in the head of a department, which the Excepting Clause plainly permits.

This result also accords with the longstanding practice of the Executive Branch. The Executive Branch traditionally has distinguished between appointments that require Senate confirmation and appointments that the President may make alone. The Attorney General and this Office have long held the view that the President's power to appoint officers requiring Senate confirmation must be exercised by the President and may not be delegated. *See Relation of the President to the Executive Departments*, 7 Op. Att'y Gen. 453, 465 (1855); *Presidential Succession and*

*Delegation in the Case of Disability*, 5 Op. O.L.C. 91, 94 (1981). Nor, for example, may the President delegate his authority to demote a military officer appointed with the advice and consent of the Senate. However, a different result has obtained when Congress by law vests appointment power in the President alone and, also by law, provides that the President may delegate that authority. As noted, presidents have long delegated to the heads of departments authority to appoint inferior officers when Congress has vested that discretion in the President, and this Office has affirmed the legality of the practice. Accordingly, the Excepting Clause does not preclude Congress from providing the President a choice between appointing an inferior officer himself or delegating the responsibility to the head of a department subject to his supervision.

*Third*, you have asked whether the prohibition in the draft order that prevents the Secretary of Defense from reassigning appointment authority to a subordinate is constitutionally compelled. The question whether Congress may permit the President or the head of a department to delegate appointment authority to an officer below the head of a department is a difficult one, and we cannot provide a definitive answer at this time. As noted, delegation clearly is not to be permitted for officers requiring Senate confirmation. However, neither the Attorney General nor this Office has definitively answered the question with respect to inferior officers who do not require Senate consent. While we do not attempt to resolve the question here, we can offer this advice: so long as each nomination is submitted to the Secretary of Defense for approval (whether individually or in groups) and each appointment is made in the name of the Secretary of Defense (whether the document evidencing the appointment be signed by the Secretary or an authorized subordinate officer), the Constitution would permit much of the legwork of the appointment process to be delegated to a subordinate.

This practice would be consistent with the text of the Clause. It is true that, by naming three permissible repositories of appointment authority—the President, the Heads of the Departments, and the Courts of Law—the Excepting Clause implicitly indicates that the power may not be vested in some other person. The Excepting Clause "prevents Congress from distributing power too widely by limiting the actors in whom Congress may vest the power to appoint" and thereby "reflects our Framers' conclusion that widely distributed appointment power subverts democratic government." *Freytag v. Comm'r*, 501 U.S. 868, 885 (1991). The Clause was designed to "limit[] the universe of eligible recipients of the power to appoint" in order to ensure that such actors were readily identifiable and politically accountable. *See id.* at 880. At the same time, however, the Clause does not prohibit substantial involvement of subordinates in the appointment process.

The history of the Clause reflects this understanding. The Excepting Clause was proposed by Gouverneur Morris on the last working day of the Convention. James Madison objected that "[i]t does not go far enough if it be necessary at all— Superior officers below Heads of Departments ought in some cases to have the

appointment of the lesser offices." *See* James Madison, *Notes of Debates in the Federal Convention of 1787*, at 647 (1893, reprint 1987). Morris responded that there "is no necessity," since "Blank commissions can be sent." *Id.* Although these statements might support a broader view, at a minimum they support the view that a head of a department may use subordinates to carry out appointments so long as the appointment is submitted to the head of the department for approval and made in the name of the head of the department, upon whom ultimate political accountability must rest.

The early history of the implementation of the Clause strongly supports this view. In 1799, Congress passed a law providing that collectors of customs "shall, with the approbation of the principal officer of the treasury department, employ proper persons as . . . inspectors, at the several ports within his district." Act of Mar. 2, 1799, ch. 22, § 21, 1 Stat. 627, 642. In 1821, Attorney General Wirt concluded that inspectors of customs were "officers," upon whom were devolved "important duties," and that appointment with approbation of the Secretary of the Treasury required that "the names of the individuals proposed to be appointed shall be submitted to him, and that no one shall be appointed who shall not be approved by him." *Tenure of Office of Inspectors of Customs*, 1 Op. Att'y Gen. 459, 459 (1821). In 1843, Attorney General Legare concluded that this was not only the better construction of the statute, but "the only possible construction, under the constitution." *Confirmation of Spanish Grants of Land in Mobile*, 4 Op. Att'y Gen. 156, 164 (1843). Thus, while the appointment must remain that of the head of the department, a process whereby subordinates submit names for approval appeared to satisfy the requirement. *See also United States v. Sears*, 27 F. Cas. 1006, 1009 (C.C.D. Mass. 1812) (No. 16,247) (Story, J.) (concluding that an inspector of customs was a validly appointed officer of the United States where "the commission of the inspector reciting such approbation [of the Secretary of the Treasury] was proved at the trial"); *United States v. Morse*, 27 F. Cas. 1 (C.C.D. Maine 1844) (No. 15,820) (Story, J.) (assuming that the appointment of an inspector of customs was valid with approbation of the Secretary of the Treasury); Leonard D. White, *The Jeffersonians: A Study in Administrative History 1801–1829*, at 129 (1956) ("Lesser officers and employees did not require senatorial approval and were posted on nomination of chief clerks, auditors, collectors of customs, and other intermediate officials, and approved by the head of the appropriate department."); Leonard D. White, *The Jacksonians: A Study in Administrative History 1829–1861*, at 73 (1954) ("[A]ppointment [of inspectors of customs and other minor customs officers] was made by the collector, subject to approval by the Secretary of the Treasury. Formally the latter took no initiative, but in the larger customs houses there is evidence of prior consultation.").

The Supreme Court similarly approved of the practice in *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 393–94 (1868), concluding that an inferior officer appointed by the Assistant Treasurer with the approbation of the Secretary of the

Treasury was "appointed by the head of a department" within the meaning of the Appointments Clause. *See* General Appropriations Act of July 23, 1866, ch. 208, 14 Stat. 191, 202; *see also United States v. Mouat*, 124 U.S. 303, 307–08 (1888) (stating in a dictum that the appointment of a paymaster's clerk by another inferior officer "might still be considered sufficient to call [it] an appointment by the head of that Department" if "only approved by . . . [the] [a]cting Secretary in a formal way"). Other statutes and cases reflecting the practice are numerous. *See, e.g.*, Act of Mar. 3, 1817, ch. 110, § 7, 3 Stat. 397 (granting collectors of customs the power to appoint permanent deputies with the approbation of the Secretary of the Treasury); *United States v. Barton*, 24 F. Cas. 1025 (E.D. Pa. 1833) (No. 14,534) (appointment of deputy collector of customs by collector of customs was valid with the approbation of the Secretary of the Treasury); *Stanton v. Wilkeson*, 22 F. Cas. 1074, 1075 (S.D.N.Y. 1876) (No. 13,299) (appointment of a receiver, an officer of the United States, by the Comptroller of the Currency was valid because it was presumed to have been made with the approval of the Secretary of the Treasury); *Frelinghuysen v. Baldwin*, 12 F. 395 (D.N.J. 1882) (same); *Platt v. Beach*, 19 F. Cas. 836 (E.D.N.Y. 1868) (No. 11,215) (same).

More recently, at least three executive orders have either vested appointment authority in inferior officers or expressly permitted a head of a department to do so. Executive Order 10637 of Sept. 16, 1955, vested appointment authority in the Secretary of the Navy when the Coast Guard operated as a service of the Navy, and the Secretary of the Navy was not at that time the head of a department. *Id.* § 5. Executive Order 11140 of Jan. 30, 1964, allowed redelegation of appointment authority by the Secretary of Health, Education, and Welfare to any Senate-confirmed officer. *Id.* § 4. And Executive Order 12396 of Dec. 9, 1982, allowed redelegation of appointment authority by the Secretary of Defense to subordinates. Furthermore, as noted above, this Office's 1957 opinion discussed and approved of the practice of service secretaries, making promotions without prior reference to the President, at a time when the service secretaries were not heads of departments. We assume, however, in the absence of contrary evidence, that, even under these orders and under the practice described in the 1957 opinion, all appointments were made with the ultimate approval of the head of the department, consistent with the earlier authority.

In view of this history and practice, we think it clear that the head of a department at a minimum may receive substantial assistance from subordinates in the appointment process. Even assuming that the ultimate decision whether to make an appointment must remain the responsibility of the head of the department, approval of a list of appointments by the head of the department would satisfy this requirement. Furthermore, it is well established that the documents evidencing an appointment by the President or the head of a department need not be signed by that person. *See, e.g.*, *Relation of the President to the Executive Departments*, 7 Op. Att'y Gen. 453, 472–73 (1855); *Navy Appointments*, 22 Op. Att'y Gen. 82, 84

(1898); *see also Dysart v. United States*, 369 F.3d 1303, 1312 (Fed. Cir. 2004) ("In the case of a promotion to the grade of rear admiral, the final public act of appointment is the signing and issuance of the letter of appointment by the Special Assistant for Flag Officer Management and Distribution on behalf of the President.").

C. KEVIN MARSHALL
*Deputy Assistant Attorney General*
*Office of Legal Counsel*