## BROWN v. TILLINGHAST.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1899.)

### No. 457.

1. NATIONAL BANKS—RESOLUTION TO INCREASE CAPITAL STOCK—VALIDITY AND EFFECT.

The effect of a resolution of the shareholders of a national banking association, proposing to increase the capital stock from $200,000 to $500,000, and authorizing the president and cashier, whenever $50,000 of the increase was subscribed and paid, to certify the same to the comptroller, was to render valid and binding on the subscribers, when paid and approved by the comptroller, any increase amounting to $50,000, or any multiple thereof, not exceeding $300,000 in all.

2. SAME—COMPTROLLER'S CERTIFICATE APPROVING INCREASE OF STOCK—COLLATERAL ATTACK.

The action of the comptroller of the currency in issuing a certificate approving an increase of the capital stock of a national bank is that of a special tribunal, which is not subject to collateral attack; and a suit by a subscriber to such stock against a receiver of the bank after its insolvency, for the recovery of his subscription, on the ground that the increase was illegal, and the comptroller's certificate void, is such an attack.

3. SAME—RIGHTS OF SUBSCRIBER TO INCREASE OF STOCK.

Where a subscription to a part of the increased stock of a national bank has become complete and binding, under the terms of the original resolution of increase, its validity is not affected by any subsequent action looking to a limitation of the amount of increase authorized.

Appeal from the Circuit Court of the United States for the Western Division of the District of Washington.

The appellant filed in the circuit court a bill in equity, the substantial averments of which are as follows:

That on September 2, 1891, the Columbia National Bank of Tacoma, Wash., was incorporated as a banking association, with a capital stock of $200,000, all of which was subscribed before January 12, 1892. That on January 12, 1892, a meeting of the shareholders was held, at which a resolution was adopted proposing to increase the capital of the association from $200,000 to $500,000, and authorizing the president or cashier, as soon as money should be paid in on said increased stock to the amount of $50,000, to certify the same to the comptroller of the currency. That on July 17, 1892, the complainant subscribed 50 shares of said proposed increase of capital, and paid to the association $5,000 on account, and received from the association an ordinary stock certificate, reciting that he was the owner of 50 shares. That on or about January 2, 1894, the complainant received from the association $200 dividend on his stock. That on July 25, 1895, the board of directors adopted a resolution, reciting that whereas $150,000 of the increase of capital authorized by the resolution of January 12, 1892, had been paid in, and the remaining $150,000 of said proposed increase had not been paid, it was resolved that the unpaid portion be canceled and rescinded, and the paid-up capital of the association be fixed at $350,000, and that the comptroller of the currency be notified of the increase of $150,000, and that the same had been paid, and he be required to approve and issue a certificate of such increase, according to law. That thereupon the officers and directors of said association applied to the comptroller of the currency to approve an increase of the capital of the association in the sum of $150,000. That on August 9, 1895, the comptroller of the currency wrote to the cashier of the banking association a letter, as follows: "Sir: You are respectfully informed, after a careful investigation into the question of the increase of the capital stock of your bank, that I have determined to approve an increase in the sum of $150,000, upon the following condition: A meeting of the shareholders must be called for the purpose of considering the question of increasing the capital stock, and the notice of said meeting must be given to the shareholders, by mail or pub-

lication, thirty days prior to the date of holding the same, and must specifically state that the matter of increasing the capital stock in the sum of $150,000, making the capital, after increase, $350,000, will be considered at such meeting, and such other business as may properly come before it. If, at such meeting, a two-third's stock vote is obtained in favor of said increase, and the legal requirements are fully met, the increase will receive my approval; it being my understanding that there' is at present $150,000 which has been paid into the bank for the purpose of increasing the capital stock, and which has hitherto been reported as uncertified capital stock. The present assessment of 25 per cent. upon the present shareholders of the bank must stand and be collected. If necessary, after the increase of capital has been approved, a further assessment may be ordered, but this is a matter that will be determined later. All necessary blanks and instructions in the matter of the increase of capital stock are herewith inclosed." That the articles of the banking association provided that meetings of its stockholders should be called by its board of directors, or by three of its shareholders, by publishing notice for 30 days in a newspaper published in the city of Tacoma, or by mailing to each shareholder notice in writing 30 days before the time fixed for the meeting. That on August 9, 1895, the president and cashier of the association caused a notice, signed by them only, to be published in a daily newspaper at the city of Tacoma, of which the following is a copy: "A special meeting of the stockholders of the Columbia National Bank of Tacoma, Washington, is hereby called for Monday, the 9th day of September, A. D. 1895, at 10 o'clock a. m., at the office of said bank, to take action in regard to the increase of the capital stock in the sum of $150,000, making the capital, after increase, $350,000, which will be considered at said meeting, and to attend to any other business that may properly come before the meeting." That the notice was not published for 30 days continuously prior to the time fixed for the said meeting, or for any more than 20 of the days intervening between August 9, 1895, and September 9, 1895, and no other notice of the proposed meeting was given to the stockholders, and that the complainant had no knowledge of said meeting, or of any intention to hold the same, until some time in August, 1897. That 58 shareholders of said association, owning in the aggregate 1,472 shares of the original capital of the association, purported to be represented by proxies to vote their stock at said meeting. That on September 9, 1895, T. W. Bean, who held said proxies, and 9 stockholders of the association, who held 106 shares of the stock, held a meeting, and assumed to cast the vote of such shareholders in favor of the resolution to increase the capital stock as proposed. That thereafter, at the request of the directors and officers, but without the assent of the shareholders, one Charles P. Corbit applied to the comptroller of the currency for his approval of the increase; and on October 21, 1895, said Corbit, who was one of the board of directors, delivered to the comptroller of the currency a letter in which he reviewed the financial condition of the association, stating that its original capital was greatly impaired, and that it was absolutely necessary, if the business of the association were to be continued, not only that its capital be increased as proposed by him, but that an assessment of from 30 to 50 per centum be levied upon all the capital of the association, including the increase of capital. That on October 23, 1895, the comptroller of the currency signed a certificate, reciting that the capital stock had been increased in the sum of $150,000. and that said increase had been paid into the association as part of its capital, and that said increase was approved by him. That at the time when said instrument was so signed the comptroller had fully determined and then intended to appoint a receiver for said association, and to wind up its affairs as an insolvent national banking association, and that he signed said certificate solely for the purpose of making the subscribers to said increased capital liable to assessment by him to pay the debts of the association. That, after signing said certificate, the comptroller caused the same to be deposited in the post office at Washington, addressed to the association at Tacoma, but the certificate never reached its destination, never came into the possession of the association nor any of its officers, but was intercepted and retained by a bank examiner acting under instructions of the comptroller, and was afterwards turned over to the defendant, the receiver of the banking

association. That the complainant never assented to transfer his subscription to the increase of capital voted at the meeting of January 12, 1892, to that proposed or voted at the meeting of September 9, 1895, and that the increase of capital so proposed at the meeting of January 12, 1892, was never submitted to the comptroller for his approval or considered by him. That on October 24, 1895, Charles Cleary, a bank examiner, acting under instruction of the comptroller of the currency, took possession of the bank of said association, and all its books, records, and assets, and was, on October 30, 1895, appointed receiver by said comptroller, to wind up its affairs as an insolvent national bank, until he was succeeded by the defendant as such receiver. That until August 25, 1895, the complainant erroneously believed he was the owner of 50 shares of stock of said association, and that proper proceedings had been taken to render valid the increased capital to which he had subscribed as aforesaid, and that while under such erroneous belief, in August, 1895, he paid to said association, at the request of its officers, $1,250, as an assessment upon the 50 shares of the capital. That on June 22, 1896, the comptroller of the currency made an assessment of $61 upon each of the shares of said stock, and the defendant, under the same erroneous belief and mistake, paid, on September 2, 1896, to the defendant, $3,050 in compliance with said demand. That on or about August 1, 1896, the comptroller declared and paid to the creditors of said association whose claims had been allowed a dividend of 20 per centum upon the amount of their several claims. That no debt of any kind was incurred by said association subsequent to the time of signing the certificate approving an increase of the capital. On October 23, 1895, the complainant in his bill offered to return to the association the money received by him as dividend, or to credit the same upon his claim, as the court should direct. The prayer of the bill was that the increase of capital to which complainant subscribed be adjudged to have been abandoned by the association, and that the certificate issued by the comptroller be decreed null, and that the complainant be decreed to be a creditor of the bank to the amounts he had paid on assessments.

T. W. Hammond, for appellant.

Philip Tillinghast, in pro. per.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the facts, delivered the opinion of the court.

The question presented on the appeal in this case is whether the circuit court erred in sustaining a demurrer to the bill for want of equity. The facts stated in the bill are substantially the same as those which were involved in the case of Bank v. Mathews, 29 C. C. A. 491, 85 Fed. 934, recently decided by this court. In that case the court said:

"When a man subscribes to a proposed increase of stock in a national bank, with knowledge that the stockholders had, by a resolution duly passed, authorized the officers of the association, with the approval of the comptroller of the currency, to increase the capital stock in any multiple of $50,000, up to $300,000, as the subscriptions shall be paid in, he is bound by his act of subscription in any amount of the increased stock which may at any time thereafter be voted and authorized, not exceeding the amount of $300,000, and not exceeding the amount of money actually paid in, and is estopped from questioning the regularity of the proceedings of the bank, its directors, officers, or shareholders, provided the certificate and consent of the comptroller of the currency to such increase has been obtained. * * * His [the comptroller's] judgment as to the sufficiency of the facts and regularity of the proceedings, like that of other special tribunals, upon matters coming within his exclusive jurisdiction, is unassailable, except by a direct proceeding for correction or amendment."

It is attempted to distinguish the present case from that, on the ground that in the case at bar the action of the comptroller of the

currency in issuing the certificate is directly attacked, whereas in Bank v. Mathews its validity was assailed collaterally. In the Mathews Case the action was brought by a shareholder against the receiver to establish a claim against the bank for the amount paid by the shareholder on his subscription for a portion of the increased stock. In the present case a shareholder sues the receiver in equity, and seeks to recover the amount which he has paid on his subscription to the increased capital, and he asks the court to decree that the increase was illegal, and the comptroller's certificate void. There is no substantial difference in the causes of action. They are both actions against the receiver, and the object and purpose of both is the same. In neither is the proceeding directly against the comptroller, or for the purpose of correcting or revising his decision. In the view which this court and other courts have taken of the nature of the comptroller's function in certifying to an increase of capital stock, the present suit is a collateral attack upon a judicial or a quasi judicial decision,—a decision which is conclusive except as against direct attack. Tillinghast v. Bailey, 86 Fed. 46; Rand v. Bank, 87 Fed. 520. But, if this were a direct attack upon the decision of the comptroller and the validity of his certificate, we are still of opinion that no case of equitable cognizance is presented by the bill. The appellant had notice of the meeting of January 12, 1892, and of the terms of the resolution under which his subscription was made. He subscribed to the stock under the conditions which were imposed by that resolution. The resolution expressly provided for an increase of capital by installments of $50,000 each, or whenever a subscription to the amount of $50,000 or a multiple thereof should be paid in and certified to the comptroller. Under such a resolution, it was not necessary that the full amount of the $300,000 increased capital should be subscribed before any portion of such subscription should be certified to the comptroller. At any time after $50,000 was subscribed and paid in, that fact might have been properly made known to the comptroller, and his certificate might have been obtained, certifying to that amount of increased capital; and when the sum of $150,000 was subscribed and paid, and the proof thereof was in due form presented to the comptroller, he could lawfully have certified that the capital was increased to that amount. The only effect of the action of the shareholders on September 9, 1895, was to limit the amount of the total capital of the association to $350,000. We are unable to perceive how any of the proceedings of the directors or of the shareholders so limiting the increase of the capital have affected the substantial rights of the appellant. His rights and his liabilities were fixed by the resolution of January 12, 1892, by his subscription to the increased capital, and by the fact that $150,000 of such increased and paid-in capital was certified to the comptroller, and his certificate obtained therefor. It is immaterial, therefore, whether the notice of August 9, 1895, was duly issued or published, or whether the special meeting of the shareholders, held in pursuance thereof, was legal or not. The law was complied with, irrespective of that meeting and those proceedings. We find no error in the decree of the circuit court sustaining the demurrer to the bill. The decree will be affirmed.