## ALDRICH v. CAMPBELL.

(Circuit Court of Appeals, Ninth Circuit. November 6, 1899.)

### No. 556.

**1. JURISDICTION OF FEDERAL COURTS—ANCILLARY SUIT.**

A suit in equity in a circuit court of the United States to restrain the defendant, as receiver of an insolvent national bank, from prosecuting an action at law in the same court against the complainant, is ancillary to the action at law, and the court has jurisdiction without regard to the amount involved.[1]

**2. NATIONAL BANKS — ASSESSMENTS ON STOCKHOLDERS — CONCLUSIVENESS OF COMPTROLLER'S ACTION.**

The action of the comptroller of the currency in ordering an assessment against the stockholders of an insolvent national bank, whether a first assessment or one made subsequently, is a judicial determination of the necessity for such assessment, which is conclusive on the stockholders, and cannot be questioned by them in any litigation which may ensue, either at law or in equity.

**3. SAME—POWER OF COMPTROLLER—SECOND ASSESSMENT.**

The comptroller has power to order successive assessments against the stockholders of an insolvent national bank, ratably on all, where the aggregate does not exceed the par value of the stock.

Appeal from the Circuit Court of the United States for the Western Division of the District of Washington.

This is an appeal by the defendant in the court below from two orders made by the circuit court of the United States for the district of Washington, Western division, overruling the demurrer of defendant to the bill of complaint, and granting an interlocutory injunction restraining the defendant, as receiver of the Tacoma National Bank, from proceeding further against the plaintiff in an action at law pending in the same court. It appears: That Louis D. Campbell, a citizen of the state of Washington, was a shareholder, to the extent of 100 shares, in the Tacoma National Bank, a national banking association organized under the national banking laws of the United States, with a capital stock of $200,000. That on December 4, 1894, said bank suspended payment and closed its doors. Thereafter, on the 14th day of December, 1894, the then comptroller of the currency of the United States, in accordance with the banking laws of the United States, appointed one Philip V. Anderson as receiver of said banking association, who duly qualified and took into his possession all of the assets and effects of the said banking association, and served as such receiver until the 30th day of January, 1899, when he resigned from said receivership, and the appellant in the present suit, J. Frank Aldrich, was appointed by the comptroller to serve in his stead. Aldrich thereupon qualified, and ever since has been the duly appointed, qualified, and acting receiver of said Tacoma National Bank of Tacoma. About the 27th day of April, 1895, upon a proper accounting made by the receiver of said bank to the comptroller, and upon a valuation of the uncollected assets remaining in said receiver's hands, it appeared to the satisfaction of the comptroller of the

---

[1] As to supplementary and ancillary proceedings and relief in federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

currency that in order to pay the debts of said bank it would be necessary to enforce the individual liability of the stockholders thereof, as prescribed by sections 5151 and 5234 of the Revised Statutes of the United States, to the extent of $130,000, or $65 per share of the capital stock of said bank; and the comptroller accordingly levied an assessment in that amount upon the shareholders of said bank upon said 27th day of April, 1895, to be paid by them ratably on or before the 6th day of August, 1895, and directed said receiver to proceed, by suit or otherwise, to enforce to that extent the individual liability of the said stockholders. The appellee herein paid to said receiver $6,500 in compliance with said assessment. A further assessment was made upon the shareholders of said bank by the comptroller on January 30, 1899, of $34,000, or $17 per share, to be paid ratably on March 1, 1899, with the same direction to the receiver to take the necessary proceedings for its enforcement. The appellee, Louis D. Campbell, refused to comply with the demand of the receiver for the payment of his pro rata of this assessment; and thereupon the receiver commenced an action at law in said circuit court against said Campbell, demanding judgment for $1,700, with interest from January 30, 1899, and costs. Campbell then filed a bill in equity, stating the pendency of said action at law, and alleging that the total indebtedness of said bank at the time it suspended payment did not exceed $222,362.34; that the total amount collected by the receivers from the assets of said bank was $139,000; that the total amount of the assessment levied by the comptroller of the currency upon the shareholders was $130,000; and that the sum of these two amounts, $269,000, was at least $46,637.66 in excess of the total indebtedness of said bank at the time it suspended payment, and largely in excess of said indebtedness plus the interest thereon to the time of said assessment, August 6, 1895. He further alleged that he was debarred from interposing these facts as a defense to the action at law, and could not obtain full and complete justice in said action; that the comptroller of the currency, by said assessment of August 6, 1895, had collected from said Campbell $1,500 in excess of the amount lawfully assessable against him as a stockholder in said bank, wherefore he prayed that said comptroller and receiver be decreed to repay to him said sum of $1,500, and be enjoined from further prosecuting the said action at law. The comptroller filed a plea to the jurisdiction of the circuit court for the district of Washington, and the bill was dismissed as against him. The receiver of said bank, J. Frank Aldrich, demurred to the bill on the ground of want of jurisdiction, for the reason that the amount in controversy was less than $2,000, and the further ground that complainant had not in and by his bill stated such a cause as entitled him, in a court of equity, to any discovery from the respondent, or to any relief against him as to any of the matters contained therein. The court overruled the demurrer, and, in accordance with such ruling, entered an interlocutory order restraining the said Aldrich, as receiver of the Tacoma National Bank, until the hearing and determination of said cause, from proceeding further against said Campbell in the action at law pending in said court. From these orders an appeal is taken to this court.

P. Tillinghast, for appellant.

Campbell & Powell, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The principal question in the proceedings under review is the action of the court below in overruling the demurrer of the respondent (appellant) to the bill in equity filed by the complainant (appellee). The first ground of this demurrer was the want of jurisdiction of the circuit court, for the reason that the amount in controversy was less than $2,000. It has been repeatedly decided that a receiver appointed by the comptroller of the currency to close up the affairs of an insolvent national bank may sue in the federal

court without regard to his citizenship, or the amount in controversy. Price v. Abbott (C. C.) 17 Fed. 506; Platt v. Beach, 2 Ben. 303, 19 Fed. Cas. 836; Stanton v. Wilkeson, 8 Ben. 357, 22 Fed. Cas. 1,074; Kennedy v. Gibson, 8 Wall. 498; Bank v. Kennedy, 17 Wall. 19; Myers v. Hettinger (C. C. A.) 94 Fed. 370. It is also a well-settled principle of law that a bill filed in the equity side of a court to restrain or regulate a judgment or a suit at law in the same court is not an original suit, but ancillary and dependent, and merely supplementary to the original suit. Cortes Co. v. Thannhauser (C. C.) 9 Fed. 226; Id., 21 Blatchf. 552, 18 Fed. 667; Jones v. Andrews, 10 Wall. 327; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27; Johnson v. Christian, 125 U. S. 642, 8 Sup. Ct. 989, 1135. The bill demurred to here was ancillary to the common-law action brought by the receiver in the circuit court, and the jurisdiction of the court in the dependent case is founded upon the jurisdiction of the court over the original case.

The real controversy in the case at bar arises, however, on the second ground of demurrer, which presents this question: Does the bill state facts entitling complainant (appellee) to any relief or discovery in equity against said receiver? The bill alleges the total indebtedness of the bank at the time of suspension of payment; the amount collected by the receiver from the assets, and upon the first assessment levied by the comptroller; that these collections were in excess of the total indebtedness of the bank, including interest; and that the second assessment levied by the comptroller was for this reason unnecessary and unlawful. It is well established that the comptroller of the currency is vested, by virtue of the national banking law, with authority to determine when it is necessary, in winding up the affairs of an insolvent bank, to enforce the liability of the stockholders, and power to levy assessments accordingly; that such determination and any action thereon are conclusive upon the stockholders, and not to be questioned in any litigation that may ensue. Kennedy v. Gibson, 8 Wall. 498; Casey v. Galli, 94 U. S. 673; Bank v. Case, 99 U. S. 628; Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788; Bushnell v. Leland, 164 U. S. 684, 17 Sup. Ct. 209; Bank v. Mathews, 29 C. C. A. 491, 85 Fed. 934; Nead v. Wall (C. C.) 70 Fed. 806; Young v. Wempe (C. C.) 46 Fed. 354; Welles v. Stout (C. C.) 38 Fed. 67; Aldrich v. Yates (C. C.) 95 Fed. 78.

It is admitted by the appellee that the comptroller's action in levying the first assessment was conclusive upon the shareholders, but he contends that, under the facts stated, the second assessment was a wrongful and illegal one, and exceeded the jurisdiction of the comptroller.

Section 5151 of the Revised Statutes of the United States provides as follows:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. * * *"

Section 5234 provides:

"On becoming satisfied * * * that any association has refused to pay its circulating notes * * * and is in default, the comptroller of the currency may forthwith appoint a receiver. * * * Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues and claims belonging to it * * * and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders."

In Kennedy v. Gibson, supra, a bill in equity had been filed in the circuit court for the district of Maryland by Kennedy, the receiver of the Merchants' National Bank of Washington, in the District of Columbia. It was alleged in the bill that the bank had failed to redeem its circulating notes, and that the receiver had ascertained that the assets and credits of the bank were wholly insufficient to pay its debts and liabilities, and that it would be necessary to the complete and entire administration of his trust that recourse should be had to the personal liability imposed on the stockholders by law. The bill, however, contained no averment of any action by the comptroller touching the personal liability of the stockholders. The defendants demurred to the bill, and the demurrer was sustained, whereupon the case was appealed to the supreme court. The principal question there was whether the omission of the bill to aver action by the comptroller touching the personal liability of the stockholders prior to suit being brought by the receiver was fatal to the bill. The court, in answering this question, explained the scope and purpose of the law relating to the dissolution of national banks in such full and explicit language that no doubt is left as to the power and duty of the comptroller, and the authority of the receiver of the bank, acting under his direction. The court said:

"The receiver is the instrument of the comptroller. He is appointed by the comptroller, and the power of appointment carries with it the power of removal. It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and, if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action on his part is indispensable, whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of suit by the receiver. The fact must be distinctly averred in all such cases, and, if put in issue, must be proved. The liability of the stockholders is several, and not joint. The limit of their liability is the par of the stock held by each one. Where the whole amount is sought to be recovered, the proceeding must be at law. Where less is required, the proceeding may be in equity; and in such case an interlocutory decree may be taken for contribution, and the case may stand over for the further action of the court—if such action should subsequently prove to be necessary—until the full amount of the liability is exhausted. It would be attended with injurious consequences to forbid action against the stockholders until the precise amount necessary to be collected shall be formally ascertained. This would greatly protract the final settlement, and might be attended with large losses by insolvency and otherwise in the intervening time. The amount must depend in part upon the solvency of the debtors, and the validity of the claims. Time will be consumed in the application of these tests, and the results in many cases cannot

be foreseen. The same remarks apply to the enforced collections from the stockholders. A speedy adjustment is necessary to the efficiency and utility of the law. The interests of the creditors require it, and it was the obvious policy and purpose of congress to give it. If too much be collected, it is provided by the statute that any surplus which may remain after satisfying all demands against the association shall be paid over to the stockholders. It is better they should pay more than may prove to be needed, than that the evils of delay should be encountered."

In Casey v. Galli, 94 U. S. 673, the action was at law to enforce the individual liability of the defendant as a stockholder of an insolvent national bank. The defendant demurred to the declaration, and assigned, among other causes of demurrer, that the declaration demanded a larger sum than the defendant was required by the statute to pay, and also an additional sum by way of interest. The defendant was also permitted to enter a plea to the declaration, alleging, among other things, that the comptroller of the currency had determined and decided to exact from the defendant, and from a number of stockholders of the bank less than the whole, such sums of money as would suffice to pay all the debts and liabilities of the said bank, with the intent and purpose to compel the defendant, and others of the shareholders who might be solvent, to contribute the entire sum necessary to pay the debts and liabilities of the bank, without any contribution from those who were insolvent. The court denied the sufficiency of these defenses; holding that the order of the comptroller was conclusive, and could not be controverted in a suit against the stockholders.

The appellee in the present case does not deny the authority of the comptroller as declared by these decisions, but he seeks to avoid the effect of such authority by contending that while, in an action on the part of a receiver of a national bank to recover an assessment, no defense can be interposed by the stockholder to such an action, however excessive or wrongful the assessment may be, nevertheless the stockholder in such a case may restrain the receiver by a bill in equity to enjoin such action; and in support of this contention he relies upon an observation of Mr. Justice Swayne in delivering the opinion of the supreme court of the United States in the case of U. S. v. Knox, 102 U. S. 422. In that case the comptroller had levied an assessment of 70 per cent. upon the par value of each share of stock of the insolvent bank, and ordered the receiver to collect the assessment. By reason of the insolvency of many of the shareholders, not half of the amount of this assessment was collected. A large creditor of the bank requested the comptroller to order a further assessment of 30 per cent. upon each share of the capital stock, for the discharge of the remainder of the bank's indebtedness. The comptroller refused to do so, because the enforcement of such an assessment would compel the solvent shareholders to pay the sums and proportions due from the insolvent shareholders. A writ of mandamus was then petitioned for, directed to the comptroller, and refused in the lower court. In the United States supreme court the legislation which resulted in the provisions of section 5151 of the Revised Statutes was reviewed, and the court held that, as the law did not intend the shareholders to be put in the re-

lation of guarantors or sureties "one for another" as to the amount
which each might be required to pay, the insolvency of one stock-
holder did not in any wise affect the liability of another. It was
accordingly held that the comptroller had decided correctly as to·
his duty in the premises, but the court made this further observation:

"Although assessments made by the comptroller under the circumstances
of the first assessment in this case, and all other assessments, successive
or otherwise, not exceeding the par value of all the stock of the bank, are con-
clusive upon the stockholders, yet if he were to attempt to enforce one made,
clearly and palpably, contrary to the views we have expressed, it cannot be
doubted that a court of equity, if its aid were invoked, would promptly re-·
strain him by injunction."

The appellee relies upon this last declaration of the court to sup-
port his action in his suit in equity. It should be noted, however,.
in this connection, that, immediately following the language quoted,.
the court distinctly reaffirms the doctrine of the cases to which ref-·
erence has been made. The court says:

"Nothing in this opinion is intended in any wise to affect the authority of
Kennedy v. Gibson, 8 Wall. 498, and Casey v. ·Galli, 94 U. S. 673. On the
contrary, we approve and reaffirm the rule laid down in those cases."

It will be seen that the point to be decided in U. S. v. Knox was
whether the comptroller was clothed with the power to make a sec-
ond assessment that would, in effect, require certain solvent share-
holders to pay, in addition to the amount due and paid by them, the
proportionate sums due and delinquent on the first assessment from·
certain insolvent shareholders, and whether the solvent shareholders·
were thus liable for the default of the insolvent shareholders. The
law had distinctly provided otherwise when it declared in section
5151 of the Revised Statutes that the shareholders of every national
bank should be held individually responsible, equally and ratably,
and not one for another. Had the comptroller attempted to make
such an assessment, he would have been acting beyond the scope
of his authority, and subject to the restraining power of the court.
But that is not the proposition in the case at bar, as here the ·first
assessment was fully paid. The comptroller has found the amount
insufficient to meet all the bank's liabilities, including interest on·
the debts of the bank accruing subsequent to the first assessment,
and the expenses· of the receivership, and in accordance with the
power and authority, judicial and executory, vested in him, has
levied a second assessment upon the shareholders. The authority to
do this is not controverted, even in the case just cited. On the con-
trary, it is there said:

"Assessments made by the comptroller, under the circumstances of the
first assessment in this case, and all other assessments, successive or other-
wise, not exceeding the par value of all the stock of the bank, are conclusive
upon the stockholders. * * *"

And the only qualification of this declaration is that if the comp-
troller were to attempt to enforce an assessment made clearly and
palpably contrary to the views expressed, namely, as to the liability
of the solvent shareholders for those insolvent, a court of equity
would doubtless restrain him by injunction. This last statement,
as to what a court of equity would do, was limited to the facts of

that case, and clearly ought not to be extended to facts of a wholly different character. In the present case the comptroller has not attempted to enforce an assessment contrary to the views so expressed, but, on the contrary, he has acted entirely in accord with the principles there announced. This is made perfectly clear, if we consider the power of the comptroller with respect to the conditions under which he acted, as disclosed by the bill: The comptroller of the currency has jurisdiction to enforce by assessment the individual liability of the stockholders of an insolvent national bank, equally and ratably, and not one for another, to the extent of the amount of their stock in the bank, at the par value thereof. Acting within this clearly-defined authority, an order of the comptroller directing an assessment is absolutely conclusive upon the stockholders of the bank, and cannot be controverted by them in any defense they may seek to interpose against an action based upon such an assessment. The par value of the stock of a national bank is $100 for each share. It appears from the bill in this case that the comptroller, in the progress of the proceedings in liquidation of the Tacoma National Bank, did, on the 27th day of April, 1895, levy an assessment, equally and ratably, upon all the shareholders of the bank, at the rate of $65 per share. This assessment, being $35 per share less than the par value of the stock, did not exhaust the jurisdiction of the comptroller to raise, within that limit, by assessment upon the stockholders of the bank, funds to meet the contracts, debts, and engagements of the bank. On the 30th day of January, 1899, the comptroller levied a second assessment, equally and ratably, on all the stockholders of the bank, at the rate of $17 per share; making a total for the two assessments of $82 per share. These two assessments, being together $18 less than the par value of the stock, were within the jurisdiction of the comptroller to make in the proceedings which he had instituted to wind up the affairs of the bank; and against this second assessment it is no defense, either at law or in equity, to say that the first assessment was more than sufficient to pay the contracts, debts, and engagements of the bank. Kennedy v. Gibson, supra. Whether that assessment was sufficient is a question which the law has placed wholly within the power of the comptroller to determine, and without some showing of fraud, accident, or mistake, it must be deemed by the court to have been insufficient, and the necessity for a second assessment conclusive. The obligations of a stockholder of the bank, as well as the power of the comptroller, representing the rights of the creditors of the bank, to enforce such obligations, are defined by positive rules; and the point at which the right of the stockholder to deny his liability ceases, and the power of the comptroller to enforce it commences, is clearly established. These rules cannot be contravened or varied by the interposition of a court of equity. Adler v. Fenton, 24 How. 407, 411. "Wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim, 'Æquitas sequitur legem,' is strictly applicable." Magniac v. Thomson, 15 How. 281, 299.

It follows that the bill does not state facts sufficient to entitle the complainant to any relief in equity, and the demurrer should have been sustained. There is still the further objection to the bill that it is a collateral attack upon a judicial or quasi judicial decision, and, under the principles announced by this court in Brown v. Tillinghast, 35 C. C. A. 323, 93 Fed. 326, cannot be maintained. The judgment of the circuit court is therefore reversed, and the cause remanded, with directions to sustain the demurrer and dismiss the bill.