## In re GILES.

District Court, N. D. Georgia. September 8, 1927.

No. 12736.

1. Banks and banking ⬤⟿63½—Superintendent of banks cannot delegate determination of stockholders' liability to depositors, or assessment and collection thereof (Banking Act Ga. 1919, art. 2, § 10; art. 7, §§ 9, 10, 23, and § 20, as amended by Acts 1925, p. 130).

Authority of superintendent of banks to determine stockholders' liability to depositors and assessment and collection thereof under Banking Act Ga. 1919 (Acts 1919, p. 135) art. 7, § 20, as amended by Acts 1925, p. 130, cannot be delegated to agent by power of attorney authorized by article 7, §§ 9, 10, of Act of 1919, notwithstanding section 23 and article 2, § 10.

2. Officers ⬤⟿47—Public officer is agent who cannot intrust performance of duties, except mechanical or ministerial acts, to others without consent of principal.

Public officer is, in large sense, agent who may not intrust performance of his duties to another without consent of principal, except that he may delegate to subagent execution of mechanical, clerical, or ministerial acts, where they are not expressly required to be performed by him.

In the matter of James L. Giles, bankrupt. Referee's conclusion that certain execution should be disallowed as a preferred lien against the bankrupt's estate affirmed.

Astor Merritt, of Douglasville, Ga., for petitioner.

Boykin & Boykin, of Carrollton, Ga., for respondent.

SIBLEY, District Judge. [1] The bankrupt, Giles, was a stockholder in an insolvent state bank. Its receiver seeks to prove for preferred payment an execution issued upon an assessment against the stockholder upon his liability to depositors, which was recorded on the execution docket more than four months before the bankruptcy. The execution, directed to all and singular the sheriffs of the state, is signed, "T. R. Bennett, Superintendent of Banks, by W. J. Davis, General Agent." It is stipulated that Davis, and not Bennett, determined on the assessment and issued the fi. fa., and that the question is whether this could be lawfully done by an agent. Davis was acting by virtue of a written power of attorney of file in the office of the superintendent of banks, signed by the superintendent, and purporting to be made by authority of sections 9 and 10, art. 7, of the Georgia Banking Act of 1919 (Acts 1919, p. 135), and to "appoint W. J. Davis general agent to supervise the liquidation of all banks now or hereafter placed in liquidation, and to make distribution of the assets, as provided by law, and until and unless this power and appointment be revoked. * * * He is authorized to do and perform such duties in connection therewith as I might and could in person do and perform." There follows a list of specific acts included in the authority, but no special mention is made of the stockholders' liability to depositors or the assessment and collection thereof.

The act of 1919 establishes a state department of banking, and authorizes the appointment, as its head, of a superintendent of banks, who is to have specified qualifications of age, character, and experience, is to take an official oath, and give a fixed bond. By section 10 of article 2 the superintendent must appoint an assistant superintendent and needed bank examiners, each of whom must take the same oath and give bond. The assistant is authorized to act as superintendent in cases mentioned in article 2, § 3. Article 7 deals with failed banks, and section 9 thereof provides:

"The superintendent may, under his hand and official seal, appoint an agent to assist him in taking possession of, liquidating and distributing the assets of any bank under the provisions hereof. * * * The superintendent may authorize such agent to perform such duties connected with such liquidation and distribution as the superintendent himself could in person do and perform."

By section 23, the compensation of the agent is to be paid from the assets of the liquidated bank. Section 10 contains nothing important here. Section 20 of article 7, as amended in 1925 (Acts 1925, p. 130), provides:

"Within ninety days after the superintendent of banks has taken possession of the assets and business of any bank, as in this act authorized, he shall make a careful estimate of the values of the cash assets of said bank which can probably be converted into cash within one year after so taking posses-

sion of the assets and business of said bank, and of the amount of such cash assets which will be available to pay depositors, and he shall immediately thereupon make an assessment upon the stockholders of said bank sufficient, when added to the cash assets so available for depositors, to pay the said depositors in full provided that such assessment shall not exceed the liability of stockholders upon their said stock. Notice of such assessment shall be given by mail to each of the stockholders of said bank, and if any stockholder so notified shall refuse or neglect to pay any such assessment within thirty days after the levy of such assessment and notice thereof, the superintendent of banks shall issue an execution against said stockholders for the amount of said assessment, which shall be enforced in like manner as executions issued by the superior courts of this state upon judgments regularly rendered by said courts; provided, however, that any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions to contest his liability for such assessment and the amount and necessity thereof. * * * Said execution shall be a lien on all property of the defendant subject to levy and sale for the amount which shall be adjudged to be due thereon from the date of the issuance thereof by the superintendent."

By the words of section 20, it is the duty of the superintendent of banks to determine on the assessment and issue the execution, and to enforce it if not paid.

[2] A public officer is, in a large sense, an agent, and falls within the general rule that an agent in whom is imposed trust and confidence, or who is required to exercise discretion or judgment, may not intrust the performance of his duties to another without the consent of his principal; but, having exercised his discretion and determined the propriety of an act, he may delegate to a subagent the execution of merely mechanical, clerical, or ministerial acts not involving judgment or discretion. 31 Cyc. 1425, 1428. Specifically of public officers it is said: "In those cases in which the proper execution of the office requires on the part of the officer the exercise of discretion and judgment, the presumption is that he was chosen because he was deemed fit and competent to exercise that judgment and discretion, and, unless power to substitute another in his place has been given him, he cannot delegate his duties to another." Even where the act is purely ministerial or executive in its nature, where the law expressly requires it to

be performed by the officer in person, it cannot be delegated to another. Mecham on Public Offices and Officers, §§ 567, 568, quoted in Horton v. State, 112 Ga. 27, 37 S. E. 100, in holding that none but the clerk of the court himself can issue a subpœna for a witness. So it is generally held that a notary cannot act by a deputy in presenting and protesting commercial paper. 29 Cyc. 1091. If these lesser officers cannot, without legislative sanction, act through another, it requires no argument to establish that the head of the state banking department must use his own judgment in such important matters as determining the solvency of a bank or the probable sufficiency of its assets to pay depositors, or the amount of the insufficiency, or the necessity for present enforcement of the stockholders' liability. Such drastic power as that of issuing final process before a judicial hearing, of commanding the assistance of all sheriffs of the state, and of fixing a recorded judgment lien upon all the property of each stockholder unless it shall be vacated by a successful litigation, surely is official power. These things have been held nonjudicial and executive as respects the unconstitutional commingling of judicial and executive powers (Coffin Bros. & Co. v. Bennett, Supt. [Ga. Sup.] 138 S. E. 670), but that does not prove them to be so devoid of official nature as to be delegable to another. The analogous power of assessment in the Comptroller of the Currency in the National Banking Act is also held nonjudicial in the same sense (Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598), but it is often referred to as quasi judicial (Deweese v. Smith [C. C. A.] 106 F. 438, 66 L. R. A. 971, affirmed 187 U. S. 637, 23 S. Ct. 845, 47 L. Ed. 344; Aldrich v. Campbell [C. C.] 97 F. 663; Weitzel v. Brown, 224 Mass. 190, 112 N. E. 945). That the Comptroller's power is non-delegable seems to be assumed in Adams v. Johnson, 107 U. S. 251, 2 S. Ct. 246, 27 L. Ed. 386, where it was held that his letter directing the assessment was sufficient evidence of his action in the matter.

The question therefore narrows to whether the Legislature has provided for a delegation of the power by section 9 of article 7 of the Act of 1919. That section seems to contemplate the appointment of a liquidating agent for each bank taken in charge by the superintendent. There is nothing, however, to prevent the same agent acting for two or for all banks in liquidation, if he is equal to the task. We pass, therefore, without discussing, the extreme breadth of the appointment involved in this case, to take up the

construction of the section. Its concluding language, permitting authority to the agent "to perform such duties connected with the liquidation and distribution as the superintendent himself could in person do and perform," cannot be taken in its fullest sense, because to do so would merely substitute the agent for the superintendent, and be a practical abdication of his functions, whereas the opening words of the section state that the appointment is of an agent to *assist* him. Since the agent takes no oath and is not paid from the public treasury, and is in no sense a public officer, it is unlikely that the broader powers of the superintendent of banks were intended to be transferred to him. There is no express mention of the stockholders' liability or the assessment therefor. It is true that section 7 of article 18 declares that the individual liability of stockholders "shall be assets of such bank to be enforced only by and through the superintendent of banks." Undoubtedly this provision deprives the *depositors* of any right of action themselves, and requires collection of the stockholders' liability to be through the banking department and as a part of the liquidation of the bank, but the language is that it shall be enforced only by the superintendent of banks, without mention of any deputy or agent who might act for him. Again, in section 20 of article 7, although the agents in question had been authorized just above, the Legislature makes no reference to them in providing for the assessment of the stockholders' liability and the issuing of executions, but again names the superintendent of banks alone as the person to act. Taking all these provisions together, the reasonable conclusion is that the Legislature did not intend, by the general and loose words at the end of section 9, to confer on possibly numerous agents, who are not officers and have taken no oath as such, powers so plainly official as some of those set forth in section 20. I do not mean that the superintendent may not rely on figures and reports furnished him by agents or others, or may not adopt their recommendations, as it was held the state comptroller might do in issuing somewhat similar fi. fas., provided he finally acted on his own judgment. Scofield v. Perkerson, 46 Ga. 325, 350. No doubt also the agent may figure out the details of the assessment and give the notices and carry out similar ministerial and clerical matters, as the receiver seems to have done in Bowden v. Johnson, supra, but the superintendent must determine the necessity of the assessment and its amount, and direct it to be made, and himself must issue the executions to enforce it, if executions are necessary.

That section 20, prior to the amending act of 1925, was not violative of the due process clause of the state and federal Constitutions was held in this court by three judges in Martin v. Bennett, Superintendent, 291 F. 626. The amendment of 1925 removed the chief grounds of objection then urged.

The referee's conclusion is therefore affirmed, and the execution will be disallowed as a preferred lien against the estate.