**BENEDICT v. ANDERSON.**

**No. 6438.**

Circuit Court of Appeals, Sixth Circuit.

April 13, 1934.

John Weld Peck, of Cincinnati, Ohio (James B. Benedict, of Cincinnati, Ohio, on the brief), for appellant.

Robert S. Marx, of Cincinnati, Ohio (Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and WEST, District Judge.

HICKS, Circuit Judge.

Action by appellee, as receiver, to recover $18,000, the unpaid portion of a hundred per cent. par value assessment totaling $24,000 levied July 14, 1930, by the acting comptroller of the currency against appellant by reason of his record ownership of 240 shares of the stock of the insolvent First National Bank of St. Petersburg, Fla. Appellant admitted liability upon 90 shares, paying $6,000 thereon, but denied liability upon the remaining 150 shares. The case was tried to the court without the intervention of a jury and appellee recovered. The facts are undisputed.

The controversy had its roots in the mode of appellant's acquisition of these 150 shares. In 1915 he inherited from his brother 15 shares, which were originally paid for in cash. At that time the bank's capitalization was $50,000 represented by 500 shares. On June 12, 1917, by a vote of the stockholders owning more than two-thirds of its stock (title 12, § 58, U. S. C. [12 USCA § 58]),

the stock capitalization of the bank was increased to $100,000. Half of the shares of this increase was sold to the stockholders for cash and the remaining 50 per cent. was distributed to them as a stock dividend. The notice of this increase transmitted by the cashier to the comptroller (title 12, § 57, U. S. C. [12 USCA § 57]) embraced a certificate that the increase had been in cash. It contained no information that any part of it consisted of stock dividends. Following this notice the comptroller issued his certificate of approval (printed in the margin[1]) as provided by title 12, § 57, U. S. C. Appellant paid cash for 7½ shares of this increase and another 7½ shares were issued to him as a stock dividend. He also bought from his sister 7½ of the cash shares and 2½ of the stock dividend shares.

In June, 1920, the bank again increased its capital from $100,000 to $200,000. Of this increase appellant acquired 40 shares, making him, then, the owner of 80 shares, only 10 of which were dividend stock.

On January 8, 1924, by a vote of the stockholders, representing more than two-thirds of the stock, the capital was again increased from $200,000 to $300,000. The resolution adopted provided that of this increase $50,000 should be paid by a stock dividend from undivided profits and $50,000 should be sold for cash. The cashier notified the comptroller accordingly, who, thereupon, issued his certificate of approval identical with that heretofore printed in the margin, with the exception, of course, of the necessary changes in dates and amounts. Of this issue appellant received 20 shares as dividend stock and purchased 20 additional shares for cash.

Subsequently, on December 26, 1925, by a vote of the stockholders, representing more than two-thirds of the stock, the capital was again increased from $300,000 to $600,000 by the declaration of a stock dividend. The cashier notified the comptroller accordingly, whereupon, on December 31, 1925, the comptroller issued his certificate of approval again, identical with that heretofore printed except for dates and amounts. Appellant received 120 shares of this dividend stock and it thus appears that of the 240 shares owned by appellant 90 were originally issued for cash paid into the bank and 150 were issued as stock dividends for which their par value equivalent had been transferred on the books from the surplus account to the undivided profits account and thence to the capital account.

Appellant's point is that because the various increases in capital represented by dividend stock were not actually paid in cash the issuance of the stock was invalid, that title 12, § 57, U. S. C., specifically declares that "no increase of capital shall be valid until the whole amount of such increase is paid in" and that the stock itself being void the assessment levied thereon was unauthorized. But this presents an issue which is not within our province to determine. It constitutes a purely collateral attack upon the three certificates of the comptroller referred to above. For the protection of creditors and depositors, the law has very wisely and definitely forestalled such a defense.

In Scott v. Deweese, 181 U. S. 202, at 209, 21 S. Ct. 585, 587, 45 L. Ed. 822, it was said:

"But does it follow that one who claimed to be a shareholder in respect of an increase of the bank's capital, and who was recognized as such by the bank, particularly if he held a formal certificate stating that he was a shareholder, can escape liability, under section 5151 [12 USCA § 63], by simply proving, after the bank has suspended and

---

1 "T—Duplicate Form 1921. Ed. 500—F. C., Jan. 13–16. ·7730

"Certificate Approving Increase of Capital Stock.

"Treasury Department,
Office of the
Comptroller of the Currency. ·

"Washington, D. C., August 24, 1917.
"Whereas, Satisfactory notice having been transmitted to the Comptroller of the Currency that the Capital Stock of The First National Bank of St. Petersburg, Florida, has been increased in the sum of Fifty Thousand Dollars ($50,000), in accordance with the provisions of an Act of Congress approved May 1, 1886, and that the whole amount of the increase has been paid in, and that the paid-up Capital Stock of the Bank now amounts to the sum of One Hundred Thousand Dollars ($100,-000);

"Now, it is hereby certified, That the Capital Stock of The First National Bank of St. Petersburg, having been increased in the sum of Fifty Thousand Dollars ($50,-000), and the amount of the increase paid into the Bank as a part of the Capital Stock thereof, the said increase of Capital is approved.

"In witness whereof, I hereunto affix my official signature and seal of office.
"Jno. Skelton Williams,
"Comptroller of the Currency."

has been placed into the hands of a receiver, that the whole amount of the proposed increase was not in fact 'paid in' as required by section 5142 [12 USCA § 57], although the contrary was certified by the Comptroller upon the bank's report to that officer? We think not."

In Bailey v. Tillinghast, 99 F. 801, at page 808, this court said:

"The comptroller's certificate upon which the bank is allowed to begin business, and his further certificate approving an increase or reduction of the capital stock, are conclusive evidence of all facts which he is required to ascertain before the issuance thereof. These facts cover all that is essential to authorize the bank to begin, and go forward with the character and functions it is allowed to assume. Among these facts are that the capital stock has been lawfully subscribed, and, in the case of an increase, that the increase has been regularly created, and that it has been paid in. The purposes of the act in providing for and making necessary the comptroller's certificate are that he shall make inquiry, and determine the existence of these essential facts; and make record evidence, upon which the public may rely, that the required conditions do in fact exist. The conclusiveness of the comptroller's certificate is not now open to dispute. It is settled by repeated decisions upon the most satisfactory grounds. Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523; McCormick v. Bank, 165 U. S. 538, 17 S. Ct. 433, 436, 41 L. Ed. 817; Columbia Nat. Bank v. Mathews, 39 C. C. A. 491, 85 F. 934; Brown v. Tillinghast, 35 C. C. A. 323, 93 F. 326."

To the same effect see Brown v. Tillinghast, 93 F. 326, 329 (C. C. A. 9), Columbia Natl. Bank of Tacoma v. Mathews, 85 F. 934, 940 (C. C. A. 9), and Latimer v. Bard, 76 F. 536, 539 (C. C.).

Upon the general principle of the conclusiveness of the determination of the comptroller in a suit to enforce an assessment against the shareholders of an insolvent national bank see Casey v. Galli, 94 U. S. 673, 681, 24 L. Ed. 168; Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598; Kennedy v. Gibson, 8 Wall. 498, 505, 19 L. Ed. 476; Germania National Bank v. Case, 99 U. S. 628, 634, 25 L. Ed. 448; Liberty Natl. Bank v. McIntosh, 16 F.(2d) 906, 909 (C. C. A. 4); Collins v. Caldwell, 29 F.(2d) 329 (C. C. A. 5); Chase v. Hall, 30 F.(2d) 195, 197 (C. C. A. 9); Crawford v. Gamble, 57 F.(2d) 15, 17 (C. C. A. 6); Miller v. Stock, 65 F.(2d) 773 (C. C. A. 3).

The judgment must be affirmed.

The same result would follow from another viewpoint.

At the time appellant received the stock in controversy he knew that it was dividend stock. It is undisputed that either directly or by proxy he voted his stock in favor of the stock dividends at the various shareholders' meetings at which they were declared and that between June 30, 1923, and June 9, 1930, the date the bank was declared insolvent, he received, in cash, dividends upon all his stock including that received as dividend stock, $15,120, and that he has never proffered a return of any portion thereof, even after his denial of the validity of the dividend stock. His name, together with the number of shares held by him, has appeared at all times upon the records of the bank subject to inspection by all shareholders and creditors, as required by title 12, c. 2, § 62, U. S. C. (12 USCA § 62). He never undertook in an action against the bank or the comptroller to rescind the issuance to him of any of the dividend stock. The court found upon substantial evidence that the bank publicly advertised in the newspapers and other publications, on billboards, in the street cars, and upon its windows and in the financial statements placed upon its counters, that its stock was increased as above indicated.

Appellee's suit was brought under the statute (title 12, c. 2, § 63) for the benefit of the creditors and depositors of the bank and so far as they are concerned upon the undisputed facts, appellant must be treated as the owner of the stock and liable upon the assessment. Ohio Valley Nat'l Bank v. Hulitt, 204 U. S. 162, 167, 27 S. Ct. 179, 51 L. Ed. 423; Keyser v. Hitz, 133 U. S. 138, 149, 10 S. Ct. 290, 33 L. Ed. 531; Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968; Pauly v. Trust Co., 165 U. S. 606, 612, 17 S. Ct. 465, 41 L. Ed. 844; Scott v. Latimer, 89 F. 843, 852 (C. C. A. 8); Latimer v. Bard, supra (C. C.) page 541 of 76 F. Creditors and depositors will not be required to show that they became such because of their reliance upon the statutory liability of the stockholder for a double assessment. The law will presume that. Scott v. Latimer, supra (C. C. A.) page 855 of 89 F.

The judgment of the District Court is affirmed.